**LEBANON LIQUORS, INC., C.J. Beardsworth, d/b/a Advantage Liquors, Stephen E. Butler, d/b/a West Main Wine & Spirits, Eddie Conrad, d/b/a Northside Discount Liquors, E. Floyd Wilson, d/b/a Good Times Liquor, Plaintiffs/Appellees,**

v.

**CITY OF LEBANON, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Feb. 18, 1994.

Application for Permission to Appeal Denied by Supreme Court June 20, 1994.

Calvin P. Turner, Lebanon, for appellant.

Bill Easterly, Lebanon, for appellees.

TOMLIN, Presiding Judge (Western Section).

Lebanon Liquors, Inc., Advantage Liquors, West Main Wine & Spirits, Northside Discount Liquors and Good Times Liquors ("plaintiffs"), liquor stores in the city of Lebanon, filed suit in the Chancery Court of Wilson County against the City of Lebanon ("City"), seeking to recover excess inspection fees on the wholesale purchase of liquor and privilege license fees collected pursuant to T.C.A. §§ 57–3–501 and 57–3–502. The case was tried upon stipulation of facts. The chancellor found that plaintiffs were entitled to a refund of all excessive fees paid to City, and each plaintiff was entitled to recover the $500 privilege license fee paid for the year 1991. The chancellor awarded plaintiffs $55,-160.26 for the excessive fees, $2,758.01 representing 5% of the excessive fees collected but withheld by the wholesalers, and $2,500 for the privilege license fees, along with post-judgment interest of 10% per annum. On appeal, City has raised two issues: whether the trial court erred (1) in holding that the payments of excess inspection fees by plaintiffs were involuntary and therefore recover-able; and (2) that the effective date for the application of the 1990 federal census in this case was April 1, 1990. Inasmuch as the first issue is dispositive of this litigation, we pretermit the second issue. For the reasons hereinafter stated, we reverse and dismiss.

The parties entered into a written stipulation, which reads as follows, as to all the material facts in this case:

Upon agreement of the parties, **IT, IS, STIPULATED** that:

1. City of Lebanon Ordinance Number 90–817 was passed and went into effect on December 4, 1990. This ordinance imposed a $500.00 annual privilege license fee on Plaintiffs, and imposed an 8% inspection fee on all purchases of alcoholic beverages by retailers.

2. On December 4, 1990, the 1980 federal decennial census published in Tenn. Code Ann. Volume 13, reflected the population of Wilson County as 56,064.

3. The most recent "decennial census date" was April 1, 1990. 13 United States Code 141.

4. On September 18, 1991, Volume 13 of Tenn.Code Ann. reflected the April 1, 1990 federal decennial census population of Wilson County as 67,675, and was shipped to subscribers on that date.

5. This lawsuit was filed on June 10, 1992.

6. Notice of this lawsuit was served on the Defendant on June 18, 1992.

7. The first meeting of the City Council after notice of this action was July 7, 1992.

8. The second meeting of the City Council after notice of this action was July 21, 1992.

9. Ordinance Number 92–952 was passed and went into effect on July 21, 1992. This Ordinance eliminated the $500.00 privilege license fee and changed the inspection fee from 8% to 5%.

10. Between the passing of Ordinance No. 90–817 and the passing of Ordinance No. 92–952, the Plaintiffs paid to the Defendant, the difference in inspection fees between 8% and 5% the total amount of $55,160.26. This amount does not reflect

the five percent (5%) processing fee withheld by the distributors.

11. Between November 1, 1991 and the passing of Ordinance No. 92–952, the Plaintiffs paid to the Defendant, the difference in inspection fees between 8% and 5% the total amount of $27,084.99. This amount does not reflect the five percent (5%) processing fee withheld by the distributors.

12. In 1991, the Plaintiff's [sic] paid privilege license fees to Defendant, totalling $2,500 ($500 per plaintiff).

13. Pursuant to the requirements of Ordinance Number 90–817 payments of the inspection fees were made by Plaintiffs directly to the distributors of wholesale alcohol.

14. Notwithstanding other facts and considerations of the case no "written protest" was made by the Plaintiffs prior to the filing of the lawsuit.

15. It is further stipulated for the record that attached hereto is a true and exact copy of Lebanon Ordinance Number 90–817, and Lebanon Ordinance Number 92–952.

Lebanon City Ordinance No. 90–817 was adopted in December 1990 and imposed a $500 annual privilege license fee on retailers and an 8% inspection fee on wholesalers. The ordinance was passed in part pursuant to state statute, specifically T.C.A. § 57–3–501 and 502, which read as follows:

**57–3–501. Municipal inspection fee— Maximum amount.**—(a) A municipality as defined by § 57–3–101 shall have the authority to impose by ordinance an inspection fee upon licensed retailers of alcoholic beverages as defined by § 57–3–101 located within such municipality.

(b) The inspection fees shall not exceed eight percent (8%) of the wholesale price of alcoholic beverages supplied by a wholesaler in municipalities located in counties of this state having a population of less than sixty thousand (60,000) according to the 1960 federal census or any subsequent federal census.

(c) The inspection fees shall not exceed five percent (5%) of the wholesale price of alcoholic beverages supplied by a wholesaler in municipalities located in counties of this state having a population of more than sixty thousand (60,000) according to the 1960 federal census or any subsequent federal census.

\*　　\*　　\*　　\*　　\*　　\*

**57–3–502. Collection by wholesaler from retailer.**—The inspection fee shall be collected by the wholesaler from the retailer following notice given the wholesaler by the municipality that an inspection fee has been imposed by ordinance upon the retailers located within the particular municipality. The inspection fee shall be collected by the wholesaler at the time of the sale or at the time the retailer makes payment for the delivery of the alcoholic beverages.

T.C.A. § 57–3–501; T.C.A. § 57–3–502 (1989). Pursuant to the ordinance, wholesalers collected the 8% inspection fee either at the time of sale or upon delivery of the alcoholic beverages to the retailer. The ordinance required wholesalers to make monthly reports to City of the collection of such fees, designated a "tax" in the ordinance, and to make monthly remittances to City of these fees. Wholesalers were allowed a 5% collection service fee.

When Ordinance 90–817 was passed, the 1980 federal decennial census, as published in T.C.A. Volume 13, set Wilson County's population at 56,064. City charged plaintiffs an 8% inspection fee from March 1, 1991, when plaintiffs began paying the fee, to July 21, 1992 when Ordinance 92–952 reduced the rate to 5%. The April 1, 1990 decennial census for Wilson County showed a population of 67,675. This figure first appeared in Vol. 13 of T.C.A. on September 18, 1991, the date it was shipped to subscribers of the Code. Plaintiffs made no written protest to the 8% fee until the filing of this suit in June of 1992.

City contends that plaintiffs are ineligible to seek a refund because the law of our state requires that excess payments, in order to be recoverable, must have been made involuntarily and under protest. We agree.

T.C.A. §§ 67–1–901 and 67–1–911 make payment under protest a condition precedent

to the recovery of any tax collected by a municipality which is thought to be erroneously collected or unjust. Those statutes provide respectively:

**67–1–901. Payment under protest, involuntary or under duress.**—(a) In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due by the officer from any citizen, the person against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or clause of the constitution of the state, pay the same under protest.

(b) The provision of this section shall not apply to any tax collected or administered by the commissioner of revenue when such tax is paid on or administered after January 1, 1986. Notwithstanding any other provision of law, *it is the intent of the general assembly that it shall not be a condition precedent to any claim or suit for recovery of taxes collected or administered by the commissioner when such taxes were paid on or after January 1, 1986, that the same were paid under protest, involuntarily, or under duress.*

T.C.A. § 67–1–901 (emphasis added).

**67–1–911. Provisions applicable to municipal taxes.**—(a) The provisions of §§ 67–1–901—67–1–905 and 67–1–908—67–1–910 apply to the recovery of all taxes collected by any of the municipalities of this state.

(b) In order to carry out the legislative intent that all of such sections, which now apply to the recovery of state taxes erroneously paid, be conformed to apply also to the recovery of taxes erroneously paid to municipalities, the following provisions are added:

(1) The municipal officer collection any municipal taxes paid under protest shall pay revenue into the municipal treasury, and at the time of payments, shall give notice to the mayor and board of commissioners or other governing body of such municipality that the same were paid under protest;

(2) If it be finally determined by any court having jurisdiction of any suit brought within thirty (30) days after such payment under protest against the municipality to recover such taxes that the same were wrongfully collected as not being due from the party to the municipality, the municipality shall refund such taxes with such interest as the court may determine to be proper, not exceeding the legal rate, and shall pay the costs of the cause; and

(3) The city attorney or other legal officer of such municipality shall conduct the defense of such suit.

T.C.A. § 67–1–911 (1989).

■ Plaintiffs argue that T.C.A. § 67–1–901(b) relieves the requirement of payment under protest as a condition precedent to the recovery of taxes to a municipality, by virtue of the language of T.C.A. § 67–1–911(a) which states that "[t]he provisions of §§ 67–1–901 ... apply to the recovery of all taxes collected by any of the municipalities of this state." The legislature added T.C.A. § 67–1–901(b) in 1986 relieving the requirement of payment under protest for taxes due or collected *by the State.* However, no effort was made by the legislature to amend the specific provisions of T.C.A. § 67–1–911(b) which explicitly require payment under protest *to a municipality.* We are therefore of the opinion that unless plaintiffs' payments of the inspection fees were found to be involuntarily made, such are not recoverable.

■ Plaintiffs contend that even if payment under protest is still a condition precedent to recovery, that under our current law, their payments are considered to be made involuntarily or under duress. Because Lebanon City Ordinance 90–817 made any one failing to comply with the ordinance subject to criminal liability for violation of a Class A misdemeanor carrying a penalty of imprisonment of up to eleven months twenty-nine days and/or a fine not to exceed $2,500, plaintiffs assert that the payment of the inspection fees was involuntary. For this proposition, plaintiffs cite *Sky Transpo, Inc. v. City of Knoxville,* 703 S.W.2d 126 (Tenn.1985).

In that case, the court recited extensively the language of *Stroop v. Rutherford County,* 567 S.W.2d 753, 756 (Tenn.1978) which explored the meaning of the requirement of "payment under protest." The *Stroop* and *Sky Transpo* courts concluded that "the real question is whether there was such immediate and urgent necessity for the payment as to imply that it was made under compulsion." *Sky Transpo,* 703 S.W.2d at 131. Plaintiffs assert that the following language of the *Sky Transpo* opinion directly controls the case now under consideration

we observe that the Act makes willful failure to pay the admissions tax a misdemeanor for which fines and imprisonment may be imposed. We held on similar facts in *Jorgensen–Bennett Mfg. Co. v. Knight,* 156 Tenn. 579, 3 S.W.2d 668 (1928), that the existence of such sanctions gives rise to an element of duress. We are of the opinion that a taxpayer need not risk the imposition of criminal penalties in order to preserve his right to pay the disputed tax under protest and maintain an action for its recovery.

*Sky Transpo,* 703 S.W.2d at 131.

We are of the opinion that plaintiffs' reliance on *Sky Transpo* is misplaced. In *Sky Transpo,* the City of Knoxville contacted the taxpayers by letter stating that their failure to pay the taxes would result in possible criminal sanctions or seizure of its property. Furthermore, the court noted that should such a seizure have occurred, that the taxpayers would have been in breach of contract to a third party. This possibility of breach put plaintiffs at a disadvantage to assert their legal rights and therefore created a sense of immediacy for payment. In addition the court noted that the taxpayers paid each assessment by check specifically marked "under protest."

In contrast, Ordinance 90–817 provides for collection of the fees by the wholesalers from the retailers at the time of purchase or delivery. This court is under the impression, therefore, that any imposition of sanctions for failure to remit the taxes to City would fall upon the wholesalers and not the retailers. The possible imposition of sanctions without other contributing factors did not create the same sense of immediacy for payment. We therefore find plaintiffs' argument without merit.

Accordingly, we reverse and dismiss plaintiffs' suit. Costs in this cause on appeal are taxed to plaintiffs, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.