IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 10, 2016

## CHUCK'S PACKAGE STORE ET AL. V. CITY OF MORRISTOWN

**Appeal from the Chancery Court for Hamblen County**
**No. 2014-CV-458      Thomas J. Wright, Judge[1]**

---

**No. E2015-01524-COA-R3-CV-FILED-JUNE 30, 2016**

---

This case originated when six retail wine and liquor stores filed suit against the City of Morristown seeking a refund of a portion of inspection fees that had been erroneously calculated by the City. The fees were assessed by the City on the purchases at wholesale of alcoholic beverages. The City failed to use the correct percentage mandated by Tenn. Code Ann. § 57-3-501 (2013).[2] It is undisputed that the plaintiffs overpaid the City; since the plaintiffs were understandably unaware of the error, they failed to state that they were paying the fees under protest. The City moved to dismiss the case, citing the plaintiffs' failure to pay "under protest." The trial court held that Tenn. Code Ann. § 67-1-1807 (2013) relieved the plaintiffs of the requirement to pay the inspection fees under protest. Accordingly, the trial court denied the City's motion. The case proceeded to a bench trial where the court resolved all of the issues in the plaintiffs' favor. The City appeals, arguing that Tenn. Code Ann. § 67-1-1801, *et seq.* (2013) does not apply to challenges involving fees paid to municipalities. The State Attorney General filed an amicus curiae brief supporting the City's position. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Daniel R. Pilkington and Brian R. Bibb, Knoxville, Tennessee, for appellant, City of Morristown, Tennessee.

---

[1] Sitting by interchange.

[2] This statute and others cited in this opinion have been changed since the complaint in this case was filed on October 14, 2014. We will apply the version of the law in effect when the complaint was filed.

F. Braxton Terry, Morristown, Tennessee, and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for appellees, Chuck's Package Store; The Cellar, Inc.; T&T Package Store, LLC; Morristown Beverage Associates, Inc., d/b/a Cork & Keg Package Store; The Package Store; and C&C Package, Inc.

Herbert H. Slatery III, Attorney General and Reporter; Andrèe Sophia Blumenstein, Solicitor General; Charles L. Lewis, Deputy Attorney General; and Mary Ellen Knack, Senior Counsel, for the amicus curiae, State of Tennessee.

**OPINION**

**I.**

The material facts in this case are not in dispute. Tenn. Code Ann. § 57-3-501 authorizes municipalities to impose an inspection fee upon licensed retailers of alcoholic beverages. The statute provides that municipalities may collect a maximum inspection fee of either five or eight percent – depending upon the population of the county in which the city is located, as reflected in the most recent federal census – on wholesale purchases of alcoholic beverages. Municipalities located in counties with a population of 60,000 or more may collect no more than five percent in inspection fees, while those in counties with a population less than 60,000 may collect up to an eight percent inspection fee.

At trial, the plaintiffs used the terms "inspection fee" and "tax" interchangeably and maintained the revenue paid pursuant to Tenn. Code Ann. § 57-3-501 is a tax. The City also used the terms interchangeably and relied on *Lebanon Liquors, Inc. v. City of Lebanon*, 885 S.W.2d 63, 66 (Tenn. Ct. App. 1994), which treated the inspection fee as a tax. The stipulation of facts submitted by the parties at trial again used the terms "inspection fee" and "tax" interchangeably. Accordingly, the trial court treated the inspection fee as a tax and stated at trial, "there's no question that the inspection fee is simply a euphemistic reference to a tax." We note that the inspection fee at issue is referred to as a "tax" in Tenn. Code Ann. §§ 57-3-503(a) (2013) and -202(h)(i)(2) (2014). In their brief, the plaintiffs maintain that "the money collected under Tenn. Code Ann. § 57-3-501 constitutes a 'tax' within the meaning of Tenn. Code Ann. § 67-1-1807." In the same brief, however, the plaintiffs assert – admittedly for the first time on appeal – that the inspection fee is not a tax, but rather a fee, citing *Memphis Retail Liquor Dealers' Ass'n, Inc. v. City of Memphis*, 547 S.W.2d 244, 245-46 (Tenn. 1977) (finding, in part, that a prior version of "the inspection fee on 'licensed retailers of alcoholic beverages' " is "not a tax"). The resolution of this case does not depend upon the correct nomenclature of the City's assessment. As did the parties, we will use the terms "inspection fee" and "tax" interchangeably.

The City, located in Hamblen County, prior to 2011, enacted a local ordinance imposing an inspection fee of eight percent on the purchases at wholesale of alcoholic

2

beverages. The 2010 federal census was published January 1, 2011; in that census the County's population exceeded 60,000. As a result, Tenn. Code Ann. § 57-3-501 prevented the City from collecting more than a five percent inspection fee. Despite this, the City – in error – continued to collect the inspection fee at a rate of eight percent. Several years passed before the City and those paying the inspection fee learned of the error. Each of the six plaintiffs – Chuck's Package Store, The Cellar, Inc., T&T Package Store, LLC, Morristown Beverage Associates, Inc., dba Cork & Keg Package Store, The Package Store, and C&C Package, Inc. – operated as a wine and liquor store in the City during the relevant time period, January 1, 2011 to June 30, 2014. During this time, it is undisputed that the plaintiffs collectively paid the City $452,120.51 over and above what was permitted under the statute.[3] Not realizing the error in the rate, and justifiably believing they were paying the correct amount, the plaintiffs did not state that they were paying the fee "under protest."

In June 2014, Larry Bolten, owner and president of one of the plaintiffs' stores, received a letter from an attorney in which the attorney stated that the City might be imposing an erroneous inspection fee rate. Bolten forwarded the letter to the City, which sent it to Larry Clark, the City's administrative services director. In response, Clark sent a letter, dated July 8, 2014, to the plaintiffs that both acknowledged and apologized for the error. The letter also stated, "The City will go back to January of 2011 and refund any funds that were charged erroneously." However, after discussing the issue at a meeting among Clark, the city attorney, city administrator, mayor, and city council, the City determined that it did not owe the plaintiffs a refund of the erroneously-assessed fees. Clark then sent the plaintiffs a letter dated July 23, 2014, conveying this information. It is undisputed that none of the plaintiffs filed a "formal" request for a refund.

On October 14, 2014, the plaintiffs brought suit against the City in the trial court. They sought no less than $675,000 in damages, including the fees paid in error, as well as interest, damages for loss of profits, attorney's fees, and costs of litigation. The City responded by filing a motion to dismiss, partly on the ground that the plaintiffs had not paid the excess inspection fees "under protest." After a hearing on January 22, 2015, the trial court held that payment under protest was no longer a prerequisite for the recovery of overpaid taxes. The trial court stated in its order that "[t]he former requirement of payment under protest as a condition of suit to recover overpayment of taxes has been removed by statute, and the statutory change applies to taxes collected at the municipal level." The trial court cited as authority ***Admiralty Suites & Inns, LLC v. Shelby***

---

[3] After the trial, the parties stipulated that from January 1, 2011 to June 30, 2014, each of the plaintiffs overpaid the City in the following amounts: Chuck's Package Store, $173,346.33; The Cellar, Inc., $82,416.92; T&T Package Store, LLC, $62,917.82; Morristown Beverage Associates d/b/a Cork & Keg Package Store, $111,999.41; Connie Shepard (former owner of The Package Store), $5,536.45; and C&C Package Store, $15,903.58.

*County.*, 138 S.W.3d 233, 238 (Tenn. Ct. App. 2003) and Tenn. Code Ann. § 67-1-1801, *et seq.*

The City then filed an answer that raised several affirmative defenses. The City also filed a motion to alter or amend the trial court's pre-trial order, arguing that the suit is governed by Tenn. Code Ann. § 67-1-901, *et seq.*, (2013), and specifically § 67-1-911, which requires that a payment be made "under protest" as a prerequisite to recovery. The plaintiffs filed a motion to strike the City's affirmative defenses, arguing that all but one lacked factual allegations. Prior to a bench trial, the court denied the City's motion to alter or amend its pre-trial order. The trial court then granted the plaintiffs' motion, striking all but one of the City's defenses, but reserving "the right to consider the effect of any statutory requirements." The case was tried before the court on April 30, 2015. The court held that the plaintiffs are taxpayers under Tenn. Code Ann. § 57-3-501 and that excess inspection fees "were wrongfully collected and paid, and must be refunded to the taxpayers." The trial court also granted the plaintiffs prejudgment interest in accordance with Tenn. Code Ann. § 67-1-1803(b), as well as attorney's fees under Tenn. Code Ann. § 67-1-1803(d).

The City appeals the trial court's order denying its motion to dismiss and its later order denying the City's motion to alter or amend. The City also appeals (1) the trial court's order granting the plaintiff's motion to strike affirmative defenses, (2) the trial court's final judgment in the matter, and (3) the trial court's post-trial order granting attorney's fees.

## II.

In its brief, the City presents five issues for review, which we repeat verbatim:

> Whether the Trial Court erred by applying the incorrect statutory scheme and concluding that payment of the subject municipal tax under protest is not a condition precedent to recovery.
>
> Whether the Trial Court erred by finding in favor of the Plaintiffs pursuant to Tenn. Code Ann. § 67-1-1801, *et seq.* where the Plaintiffs failed to comply with the statute's jurisdictional pre-suit requirements.
>
> Whether the Trial Court erred by applying the incorrect statute of limitations.
>
> Whether the Trial Court erred by awarding attorney fees where the applicable statutory scheme does not permit the

4

assessment of attorney's fees.

Whether the Trial Court erred by granting the Plaintiff's Motion to Strike the City's affirmative defenses.

(Numbering in original omitted.)  In its amicus brief, the State of Tennessee presents the following issue for review:

Whether the trial court erred by relieving the plaintiffs of the statutory requirement of paying the municipal inspection fees under protest and filing suit for their recovery within six months of paying the fees.

## III.

We review the trial court's factual findings with a presumption of correctness and will overturn those findings only if the evidence preponderates against them. *Lee v. Lee*, No. E2006-00599-COA-R3-CV, 2007 WL 516401, at *4 (Tenn. Ct. App., filed Feb. 20, 2007) (citing Tenn. R. App. P. 13(d)).  We review the trial court's legal conclusions de novo, with no presumption of correctness.  *Lee*, 2007 WL 516401, at *4 (citing *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)).

This case involves questions of statutory interpretation, all of which are questions of law.  *Memphis Managed Care Corp. v. State, Dep't of Commerce & Ins.*, No. M2007-02437-COA-R3-CV, 2009 WL 112573, at *2 (Tenn. Ct. App., filed Jan. 14, 2009) (citing *Gleaves v. Checker Cab Transit Corp. Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000)).  We have previously stated that our standard of review for questions of statutory interpretation is as follows:

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *Carson Creek Vacation Resorts, Inc. v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002).  Our duty is to seek a reasonable construction "in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (quoting *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)).  To determine legislative intent, we must look to the natural and ordinary meaning of the language in the statute.  We must also examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19

5

S.W.3d 195, 197 (Tenn. 2000); ***T.R. Mills Contractors, Inc. v. WRH Enterprises***, *LLC,* 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." ***Nat'l Gas Distribs., Inc. v. State***, 804 S.W.2d 66, 67 (Tenn. 1991).

We are to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." ***Tidwell v. Collins***, 522 S.W.2d 674, 676-77 (Tenn. 1975); ***In re Estate of Dobbins***, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998). We must also presume the General Assembly selected their words deliberately, ***Tennessee Manufactured Hous. Ass'n. v. Metro. Gov't***., 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990), and the use of their words conveys some intent and carries meaning and purpose. ***Tennessee Growers, Inc. v. King***, 682 S.W.2d 203, 205 (Tenn. 1984); ***Clark v. Crow***, 37 S.W.3d 919, 922 (Tenn. Ct. App. 2000).

***Memphis Managed Care Corp.***, 2009 WL 112573, at *2.

**IV.**

There is no dispute that the plaintiffs failed to assert that they were paying the fees assessed by the City "under protest." In earlier cases, we had held, under Tenn. Code Ann. §§ 67-1-901 and -911, that a payment under protest was "a condition precedent to the recovery of any tax collected by a municipality which is thought to be erroneously collected or unjust." ***Lebanon***, 885 S.W.2d at 65-66. Interestingly enough, none of those cases mention Tenn. Code Ann. § 67-1-1807(b)(1). That statute, which was the codification of legislation enacted in 1986, expressly states that payment under protest "*shall not be a condition precedent* for suit for recovery of taxes paid on or after January 1, 1986. . . ." (Emphasis added.) That statute also provides that "[*a*]*ll taxes* paid on or after January 1, 1986, shall be governed by the laws regarding refunds and suits for the recovery of taxes as set out in this part" and that "*to the extent* this section conflicts with any other law, this section shall control and supersede all such laws." Tenn. Code Ann. § 67-1-1807(a), (c) (emphasis added).

The plaintiffs stated in their original complaint that Tenn. Code Ann. §§ 67-1-1801, *et seq.*, applies to taxes collected by municipalities. The trial court agreed. The City argues that payment under protest remains a condition precedent to filing suit for the recovery of municipal taxes and that Tenn. Code Ann. § 67-1-911 is the "sole remedy" for taxpayers seeking a refund of such taxes. Similarly, in its amicus brief, the Attorney General argues that the procedures set forth in Tenn. Code Ann. §§ 67-1-1801 to -1807

"have no application to taxes that are not administered by the Commissioner [of Revenue]." Therefore, the threshold question before us is whether the language of Tenn. Code Ann. § 67-1-1807 in applicable to the "under protest" requirement found in Tenn. Code Ann. § 67-1-901, *et seq.*

## V.

This case brings into sharp focus the interplay of various statutory provisions in Tenn. Code Ann. §§ 67-1-901, *et seq.*, and 67-1-1801, *et seq.*, to determine whether payment under protest is a condition precedent to sue for the recovery of taxes paid to a municipality. The City argues that Tenn. Code Ann. § 67-1-901, *et seq.*, governs the present action, while Tenn. Code Ann. § 67-1-1807 is irrelevant. In Tenn. Code Ann. § 67-1-901, *et seq.*, the requirement that a disputed tax must be paid "under protest" first appears in Tenn. Code Ann. § 67-1-901(a):

> In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due by the officer from any citizen, the person against whom the proceeding or step is taken shall, *if that person conceives the same to be unjust or illegal, or against any statute or clause of the constitution of the state, pay the revenue under protest*.

(Emphasis added.) Subsection (b) of the same statute clarifies that the requirement in subsection (a) does not apply to certain taxes "collected or administered by the commissioner of revenue":

> *This section shall not apply to any tax collected or administered by the commissioner of revenue when such tax is paid on or after January 1, 1986.* Notwithstanding any other law to the contrary, it is the intent of the general assembly that it shall not be a condition precedent to any claim or suit for recovery of any taxes collected or administered by the commissioner [of revenue] when such taxes were paid on or after January 1, 1986, that the taxes were paid under protest, involuntarily, or under duress.

Tenn. Code Ann. § 67-1-901(b) (emphasis added).

Relying on Tenn. Code Ann. § 67-1-911, the City asserts the requirement to pay a disputed tax "under protest" applies to taxes collected by a municipality: "Sections 67-1-901 – 67-1-905 and 67-1-908 – 67-1-910 apply to the recovery of all taxes collected by

7

any of the municipalities of this state." Tenn. Code Ann. § 67-1-911(a). The same statute further provides a procedure for disputing a municipal tax:

> In order to carry out the legislative intent that all of such sections, which now apply to the recovery of state taxes erroneously paid, be conformed to apply also to the recovery of taxes erroneously paid to municipalities, the following provisions are added:
>
>> (1) The municipal officer collecting any municipal taxes paid under protest shall pay such revenue into the municipal treasury and, at the time of payment, shall give notice to the mayor and board of commissioners or other governing body of such municipality that the taxes were paid under protest;
>
> *     *     *

Tenn. Code Ann. § 67-1-911(b)(1). We note that Tenn. Code Ann. § 67-1-912 provides substantively similar language regarding taxes paid to a county government.

The City also argues that the procedure provided in Tenn. Code Ann. § 67-1-911 is the "sole remedy" for a taxpayer to recover a tax paid to a municipality, in part based on the following:

> (a) *There shall be no other remedy in any case of the collection of revenue*, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by the officer under the law, the same being other or different funds than such as the taxpayer may tender, or claim the right to pay, *than that provided by this part*.
>
> (b) Subsection (a) shall not apply after January 1, 1986, to any tax collected or administered by the commissioner of revenue.

Tenn. Code Ann. § 67-1-908 (emphasis added).

Contrary to the City's position, the plaintiffs argue that Tenn. Code Ann. § 67-1-1807 relieves the requirement of paying a disputed tax "under protest":

8

(a) *All taxes paid on or after January 1, 1986*, shall be governed by the laws regarding refunds and suits for the recovery of taxes as set out in this part.

(b)(1) *It shall not be a condition precedent for suit for recovery of taxes paid on or after January 1, 1986, that the taxes be paid under protest, involuntarily, or under duress.*

(2) No suit for the recovery of any tax paid prior to January 1, 1986, shall be allowed unless such tax was paid under protest.

(c) *To the extent that this section conflicts with any other law, this section shall control and supersede all such laws*.

Tenn. Code Ann. § 67-1-1807 (emphasis added). The City maintains that these statutes are applicable only to taxes collected or administered by the state based, in part, on the following language: "The procedure established by this part is the sole and exclusive jurisdiction for determining liability for all taxes collected or administered by the commissioner of revenue. . . ." Tenn. Code Ann. § 67-1-1804.

The plaintiffs point out that Tenn. Code Ann. § 67-1-1807, the provision quoted above that eliminates the "under protest" requirement, is broadly written and does not, in any way, expressly limit its application to taxes paid to the State. The plaintiffs further point out that the provisions of Tenn. Code Ann. § 67-1-1807 "control and supersede all [conflicting] laws."

## VI.

This court, in *Lebanon*, has addressed a very similar set of facts as the one now before us. In *Lebanon*, liquor stores in Lebanon, Tennessee, sought to recover excess privilege license fees and inspection fees paid on the purchase of liquor to the City of Lebanon, pursuant to Tenn. Code Ann. §§ 57-3-501 and -502. 885 S.W.2d at 64. In that case, as in this one, the city imposed an inspection fee beyond the amount allowed by law after a new federal census showed that the municipality was in a county that had a population in excess of 60,000. *Id.* at 64-65. The liquor stores paid the excess inspection fees without written protest and later filed suit against the city in chancery court to recover the overpayment. *Id.* The trial court ruled in favor of the liquor stores, and the city appealed. *Id.* at 64. Based on the issues and arguments raised by the parties, we considered whether the interplay of Tenn. Code Ann. § 67-1-901(b) and -911(a) relieved the requirement to pay the tax under protest. *Id.* at 65-66. For the following reasons, we found that it did not:

Plaintiffs argue that T[enn]. C[ode] A[nn § 67-1-901(b) relieves the requirement of payment under protest as a condition precedent to the recovery of taxes to a municipality, by virtue of the language of T[enn]. C[ode] A[nn § 67-1-911(a) which states that "[t]he provisions of §§ 67-1-901 . . . apply to the recovery of all taxes collected by any of the municipalities of this state." The legislature added T[enn]. C[ode] A[nn § 67-1-901(b) in 1986 relieving the requirement of payment under protest for taxes due or collected *by the State.* However, no effort was made by the legislature to amend the specific provisions of T[enn]. C[ode] A[nn § 67-1-911(b) which explicitly require payment under protest *to a municipality.*

*Id.* at 66 (emphasis in original). What is most important about *Lebanon* as it pertains to the facts now before us is that *Lebanon* does not discuss or reference, in any way, Tenn. Code Ann. § 67-1-1807. The holding in *Lebanon* was followed by *Hoover, Inc. v. Rutherford Cnty.*, 885 S.W.2d 67, 70 (Tenn. Ct. App. 1994).

Subsequently, in *Decatur Cnty. v. Vulcan Materials Co.*, No. W2001-00858-COA-R3-CV, 2002 WL 31786985 (Tenn. Ct. App., filed Dec. 12, 2002), we revisited the issue of whether payment under protest is a condition precedent to the filing of suit to recover local taxes. *Decatur County* addressed a group of taxpayers' constitutional challenge of and resistance to pay a mineral severance tax imposed by Decatur County. *Id.* at *1. In that case, as in the current one, the local government argued that the taxpayers were barred from challenging the legality of the tax because they failed to pay the tax under protest. The taxpayers, on the other hand, maintained that payment under protest is no longer a condition precedent under Tenn. Code Ann. § 67-1-1807. *Id.* at *4-5. Addressing both *Lebanon* and *Hoover*, we noted that "[i]n neither case . . . was section 67-1-1807 of Tennessee Code Annotated raised as an issue on appeal." *Id.* at *5, n.4. We found that because the applicability of Tenn. Code Ann. § 67-1-1807 was not raised as an issue in either case, then "[c]onsequently, *these decisions are inapplicable* and *we conclude that section 67-1-1807 governs, removing the requirement of payment of disputed taxes as a condition precedent to a suit for recovery of taxes from a municipality as well as the State.*" *Id.* (emphasis added). We concluded that:

in a suit to recover taxes paid after January 1, 1986, payment of the tax under protest is not a condition precedent to a claim against the governmental entity imposing the tax. The language of section 67-1-1807 is quite broad, and would encompass claims regarding taxes paid to a municipality such as Decatur County, as well as taxes paid to the State. Further, the statute clearly states that the provisions of section 67-1-

10

> 1807 will control in the event of a conflict of law. Under these circumstances, we must conclude that the mineral companies were not required to pay the disputed tax under protest as a condition precedent to asserting a claim against the county regarding the illegality of the tax.

*Id.* at \*5 (footnote omitted).

We later applied the ***Decatur County*** holding in ***Admiralty Suites***, 138 S.W.3d at 238. In that case, certain hotels and motels, as well as certain guests of those establishments, sued the local municipal governments and Shelby County over the constitutionality of a hotel-motel occupancy taxes. *Id.* at 234. On appeal, this court considered whether the trial court erred by not dismissing the claims for refunds of hotel-motel occupancy taxes that were not paid under protest. *Id.* at 237. The defendants asserted that Tenn. Code Ann. § 67-1-911 requires a taxpayer to pay a disputed tax under protest before filing suit. *Id.* We disagreed with the defendants' argument and instead held that:

> We recently visited this issue in ***Decatur County v. Vulcan Materials Co.***, No. W2001-00858-COA-R3-CV, 2002 WL 31786985, at \*1 (Tenn. Ct. App. 2003) and found that "payment under protest" is no longer the exclusive procedure to challenge a tax. *Id.* at \*5. In that case, we recognized that Tenn. Code Ann. § 67-1-1807 (2003) relieves the obligation to pay "under protest" before pursuing a claim against the governmental entity imposing the tax. *Id. The wording of the statute,* we found, *is sufficiently broad to encompass claims involving taxes paid to local entities such as counties and municipalities. Id.* Accordingly, we find that the Plaintiffs in the present action had no precedent obligation to pay the disputed taxes "under protest" before bringing their claims, and we affirm the finding of the lower court on this issue.

*Id.* at 238 (emphasis added).

In the current appeal, the City argues that the plaintiffs "rely exclusively" on ***Admiralty Suites*** and ***Decatur County*** and one subsection of Tenn. Code Ann. § 67-1-1807. Alternatively, the City maintains that "the plainest conclusion" is that those cases "were wrongly decided" and that "Tenn. Code Ann. § 67-1-1807 did not impact the payment under protest requirement of Tenn. Code Ann. § 67-1-911." The City also states that "other courts have repeatedly acknowledged the requirement of paying challenged city and county taxes under protest." It cites multiple decisions that "hold that payment under protest is still required."

11

We adhere to our holdings in *Admiralty Suites* and *Decatur County*. First, by its plain language, Tenn. Code Ann. § 67-1-1807(b)(1) makes clear that "[i]t *shall not be a condition precedent for suit for recovery of taxes paid on or after January 1, 1986, that the taxes be paid under protest . . . .*" (Emphasis added.) The statute goes on to state that "[t]o the extent that this section conflicts with any other law, *this section shall control and supersede all such laws*." Tenn. Code Ann. § 67-1-1807(c) (emphasis added). When interpreting statutes, "[t]o determine legislative intent, we must look to the natural and ordinary meaning of the language in the statute" and do so without applying "any forced or subtle construction which would extend or limit its meaning." *Memphis Managed Care Corp.*, 2009 WL 112573, at *2 (internal citations and quotation marks omitted). Additionally, "[d]oubts as to the application of tax statutes will be resolved in favor of the citizen and tax statutes will be construed most strongly against the state." *Union Carbide Corp. v. Alexander*, 679 S.W.2d 938, 942 (Tenn. 1984) (citing *H.D. Watts Co. v. Hauk*, 231 S.W. 903 (Tenn. 1923)). Given these well-established principles, we hold that "[t]he wording of the statute . . . is sufficiently broad to encompass claims involving taxes paid to local entities such as counties and municipalities." *Admiralty Suites*, 138 S.W.3d at 238 (citing *Decatur Cnty.*, 2002 WL 31786985, at *5).

Further, none of the cases the City cites to support its assertion that "payment under protest is still required" persuade us to abandon our prior holdings in *Admiralty Suites* and *Decatur County*. As discussed earlier in this opinion, this court distinguished *Lebanon* and *Hoover* from cases, such as the one now before us, in which Tenn. Code Ann. § 67-1-1807 is raised as an issue on appeal. *Decatur County*, 2002 WL 31786985, at *5, n.4. In fact, this court described cases in which Tenn. Code Ann. § 67-1-1807 has not been raised as "inapplicable" to those where it has been raised. *Id.* The City cites to several cases[4] that maintain payment under protest is a prerequisite to challenge a

---

[4] *See* ***Youngblood v. Linebarger Googan Blair & Sampson, LLP***, No. 10-2304, 2012 WL 4597990, at *3 (W.D. Tenn. Sept. 30, 2012) (finding that Tenn. Code Ann. § 67-1-912(b)(2) makes payment under protest a condition precedent to recover a local tax); ***In re Penking Trust***, 196 B.R. 389, 395 (Bankr. E.D. Tenn. 1996) ("[t]he law is clear in Tennessee that, at a minimum, payment under protest is a condition precedent to the recovery of real property taxes paid to a county or a municipality"); ***Nashville Metro Gov't v. New Orleans Manor, Inc.***, No. M2013-00706-COA-R3-CV, 2014 WL 3540765, at *2-3 (Tenn. Ct. App., filed July 16, 2014), appeal denied (Nov. 19, 2014) ("Tenn. Code Ann. §§ 67-1-901-905 and §§ 67-1-908-911 provide a full, complete, orderly, and exclusive remedy for the taxpayer who believes that there was an improper exercise of the taxing power" and "as distilled from numerous cases addressing the requirement in § 67-1-901, the only question in determining whether the statute applies is whether a tax liability is being disputed"); ***State, ex rel. Williamson Cnty. v. Jesus Christ's Church at Liberty Church Rd.***, No. M2009-02439-COA-R3-CV, 2011 WL 251212, at *2 (Tenn. Ct. App., filed Jan. 13, 2011) ("to the extent [the taxpayer] asserts that the tax violates the state constitution or laws, payments of the tax under protest is a prerequisite to such contest"); ***Moscheo v. Polk Cnty.***, No. E2008-01969-COA-R3-CV, 2009 WL 2868754, at *6 (Tenn. Ct. App., filed Sept. 2, 2009) ("[u]nder Tenn. Code Ann. § 67-1-903, the taxpayer must (1) pay the tax under protest and (2) file suit to recover the sum paid under protest within six months from making the payment"); ***Metro. Gov't of Nashville & Davidson Cnty. v. Delinquent Taxpayers***, No. M2004-00040-COA-R3-CV, 2005 WL

municipal or county tax in court. However, *none of the cases cited by the City listed in footnote four address the issue of Tenn. Code Ann. § 67-1-1807, and therefore they are "inapplicable." Decatur County*, 2002 WL 31786985, at *5, n.4.

Of the cases cited by the City to indicate "payment under protest is still required," only one – *Memphis Managed Care Corp.*, 2009 WL 112573 – considers Tenn. Code Ann. § 67-1-1807. In that case, a health maintenance organization filed an action with the Tennessee Claims Commission to seek a refund of penalty and interest paid to the Department of Commerce and Insurance for the late payment of insurance premium taxes, required under Tenn. Code Ann. § 56-4-201. 2009 WL 112573, at *1. The Claims Commission found Managed Care was required to make a payment under protest of the penalties and interest owed for the late payment. *Id.* On appeal, we considered whether Tenn. Code Ann. § 67-1-901 requires payment under protest for the payment of penalty and interest imposed by the Department of Commerce and Insurance. *Id.* We held that payment under protest was required by the Claims Commission pursuant to Tenn. Code Ann. § 9-8-402(a)(2), but also found that Tenn. Code Ann. § 67-1-1801, *et seq.*, as well as the holdings in *Admiralty Suites* and *Decatur County*, were inapplicable. *Id.* at *4-5. "The Tennessee Claims Commission has exclusive jurisdiction to determine monetary claims against the state for all claims to recover taxes collected or administered by the state, with the exception of taxes that are collected or administered by the Department of Revenue." *Id.* at *3 (citing Tenn. Code Ann. § 9-8-307(a)(1)(O)) (footnote omitted). The refund at issue in *Memphis Managed Care* was under the "exclusive jurisdiction" of the Tennessee Claims Commission. *Id.* As a result, we distinguished *Memphis Managed Care* and held that:

> Managed Care's reliance on the Wilder Bill[5] is misplaced because the Wilder Bill does not pertain to actions within the jurisdiction of the Claims Commission. This is because the Wilder Bill only pertains to claims concerning taxes collected or administered by the Department of Revenue. Tenn. Code Ann. § 67-1-1801, -1804. Moreover, the Wilder Bill created

---

737126, at *6 (Tenn. Ct. App., filed Mar. 31, 2005) ("the taxpayer is required, as a prerequisite to gaining access to the courts, to pay the disputed tax under protest and sue for a refund")[Error! Bookmark not defined.]; *Heath v. Creson*, 949 S.W.2d 690, 692 (Tenn. Ct. App. 1997) ("the exclusive remedy for an aggrieved taxpayer disputing a county tax is to pay the tax and seek a refund"); *State ex rel. Manville Bldg. Materials Corp. v. Foster*, No. CA 81, 1991 WL 34554, at *4 (Tenn. Ct. App., filed Mar. 18, 1991) ("[o]ur courts have consistently held that there are only two ways a taxpayer can recover county taxes[,] . . . the administrative process provided for in T.C.A. § 67-1-707 and . . . where the taxes have been paid under protest pursuant to T.C.A. § 67-1-901").

[5] The Wilder Bill, named after Lt. Gov. John Wilder, became Public Acts 1986, Chapter 749, which enacted the original language of Tenn. Code Ann. § 67-1-1801, *et seq.*, and amended portions of Tenn. Code Ann. §§ 9-8-307, 9-8-402, 67-8-411, 67-8-116, and 67-1-801, -707, -901, -903, -904, -905, -908, and -909.

13

an entirely separate statutory scheme concerning actions to recover taxes collected or administered by the Department of Revenue, one significant component of which is it conferred exclusive jurisdiction of such matters upon the Chancery Court. Tenn. Code Ann. § 67-1-1803(a). Managed Care is not seeking to recover a tax, penalty or interest "collected or administered by the Department of Revenue." We, therefore, find the Wilder Bill has no application to the issues on appeal.

Managed Care also contends that this court's holdings in *Admiralty Suites* . . . and *Decatur County* . . . stand for the proposition that payment under protest is no longer a prerequisite to recover taxes, penalties, and interest pursuant to Tenn. Code Ann. § 67-1-1807. We find Managed Care's reliance on these cases is also misplaced because these cases are distinguishable from the matter on appeal.

\*      \*      \*

We . . . find *Decatur County* distinguishable from the present case because the mineral severance tax imposed by counties is part of Title 67, specifically Tenn. Code Ann. § 67-7-201, and it appears in the same statutory scheme with the statute abrogating the payment under protest requirement, Tenn. Code Ann. § 67-1-1807. The premium tax at issue here, however, is part of Title 56 and is administered by the Department of Insurance pursuant to Tenn. Code Ann. § 56-4-201, *et seq*[.]

\*      \*      \*

[W]e find *Admiralty Suites* distinguishable from the present case. The tax at issue in *Admiralty*, like that in *Decatur County*, is part of Title 67. Tenn. Code Ann. § 67-1-101. Thus, for the same reason as stated above, we find the facts of *Admiralty Suites* distinguishable from the present case.

*Id.* at \*3-5 (footnotes from original omitted; footnote added).

Similarly, we find a distinction between *Memphis Managed Care* and the present action. Unlike in the case now before us, the tax at issue in *Memphis Managed Care* was under the "exclusive jurisdiction" of the Claims Commission, which included an express payment "under protest" provision in Tenn. Code Ann. § 9-8-402(a)(2). *Id.* at

14

*3. The tax at issue here – imposed pursuant to Tenn. Code Ann. § 57-3-501 – provides no such explicit requirement to pay "under protest." The statute only provides that the inspection fee is to be paid to a municipality. As this court has previously held, Tenn. Code Ann. § 67-1-1807 "is sufficiently broad to encompass claims involving taxes paid to local entities such as . . . municipalities." ***Admiralty Suites***, 138 S.W.3d at 238.

For the reasons stated above, we find that Tenn. Code Ann. § 67-1-1807 applies in this case. That statute makes clear that "[a]ll taxes paid on or after January 1, 1986, shall be governed by the laws regarding refunds and suits for the recovery of taxes as set out in this part." Tenn. Code Ann. § 67-1-1807(a). Therefore, the trial court did not err by applying Tenn. Code Ann. § 67-1-1801, *et seq.* Under this statutory scheme, payment under protest is not a condition precedent to a suit for the recovery of a tax paid to a municipality.

## VII.

The City next asserts that even if Tenn. Code Ann. § 67-1-1801, *et seq.*, does govern the present action, the plaintiffs failed to comply with the jurisdictional pre-suit notice requirements contained in Tenn. Code Ann. § 67-1-1802(a)(1). That statute provides, in part:

> The commissioner of revenue, with the approval of the attorney general and reporter, except as provided in subdivision (a)(4), is empowered and directed to refund to taxpayers all taxes collected or administered by the commissioner that are, on the date of payment, paid in error or paid against any statute, rule, regulation or clause of the constitution of this state or of the United States. . . . The commissioner is also authorized to automatically issue a credit or refund, without the necessity of the approval processes set out in this subsection (a), for the portion of estimated taxes paid in excess of the actual liability established by the initial and subsequently filed return for the tax period. The authority granted in this subdivision (a)(1)(A) extends only to taxes for which a claim is filed, with the commissioner under penalties of perjury, within three (3) years from December 31 of the year in which the payment was made. *The claim must set forth each ground upon which a refund is claimed, the amount of such refund, the tax period, the tax type, and information reasonably sufficient to apprise the commissioner of the general basis for the claim.* . . . The entire disputed amount of tax, penalty and interest must be paid before any claim for refund can be filed. . . .

15

Tenn. Code Ann. § 67-1-1802(a)(1)(A) (emphasis added). Even if a claim for a refund has not been filed as outlined above,

> [t]he commissioner is authorized to make refunds without a claim being filed if the commissioner is in possession of proper proof and facts that a refund is due within three (3) years from December 31 of the year in which the payment was made.

Tenn. Code Ann. § 67-1-1802(a)(2).

The record reflects that the plaintiffs did not file a "formal" claim for refund with the City prior to filing suit in the trial court in October 2014. The only communication between the plaintiffs and the City is as follows. One of the plaintiffs received a letter from an attorney stating that the City might be collecting inspection fees in excess of what was allowed by law; it forwarded the letter to the City in June 2014. The City sent two letters in response, one dated July 8, 2014, that conveyed, among other things, the City would reimburse the business for the overpayment and another, dated July 23, 2014, that conveyed the message the City would not reimburse the overpayment. The first letter stated, in part:

> This letter is in regards to the inspection fee that is being charged to package stores located inside Morristown. It has come to our attention that the percentage being charged should be 5% instead of 8%. The change is because of the latest census numbers that place the County's population above 60,000 people. The distributors are being made aware of the situation to change their records. The City will go back to January of 2011 and refund any funds that were charged erroneously. We apologize for the error . . . .

Despite this, the final letter from the City stated, among other things, "Upon review from the City Attorney's Office, it has been determined that no refund I [sic] due under the current Tennessee law."

The trial court applied Tenn. Code Ann. § 67-1-1802(a)(2), in determining that the plaintiffs properly brought their claim under the statutory scheme, stating:

> To the extent that this statute applies in this case, to the extent that the City of Morristown is, in essence, the commissioner of revenue in this statute, there's no question that the City had the information in its possession within three years from the

16

day of the end of the year when payment was due, so I think that the City is authorized to make a refund without a claim being made.

We also find that the City had the information and authority necessary to refund the taxpayers the excess inspection fees under Tenn. Code Ann. § 67-1-1802(a)(2). A claim for a refund, pursuant to Tenn. Code Ann. § 67-1-1802(a)(1)(A), requires that the claim "set forth each ground upon which a refund is claimed, the amount of such refund, the tax period, the tax type, and information reasonably sufficient to apprise the commissioner of the general basis for the claim." Here, the City knew of the tax type at issue, the error in the rate of inspection fees, the cause of the error, the relevant time period in which the erroneous rate was applied, which businesses were affected, and the general basis of why a refund was due. Further, the City indicated to the plaintiffs that they knew this information via the July 8, 2014 letter.

After discussing Tenn. Code Ann. § 67-1-1802(a)(2), the trial court then read aloud subsection (c)(3) of the same statute, which provides:

> The commissioner [of revenue], by written notice promptly delivered to the taxpayer, may waive the requirement that the taxpayer file a claim for refund, in which case the taxpayer may file suit in the appropriate chancery court of this state for a refund within one (1) year following the date of such waiver by the commissioner, and such suit shall proceed in all respects, including for the purpose of determining the date from which interest thereon should be calculated, as if proper and timely claim for refund had been filed by the taxpayer, and either denied or not acted upon by the commissioner within the period specified herein.

The court then stated:

> I don't think you need anything more there.
>
> In the present case, the two letters sent in July by the City to the taxpayers I think would constitute a waiver of the necessity of jumping through the hoop of filing a written claim when the City made clear to the taxpayer that they had all the information, which is what the claim requirement is intended to do. . . .
>
> On the present case, the City had all the information, and they just told them we [are not] giving you your money back and,

17

in essence, I believe, to the extent that 1802 requires it, waived the filing of a claim by these taxpayers. From a legal standpoint, *what I find is that in the present case no claim is required to have been filed to proceed on the lawsuit seeking to recover the overpaid taxes*.

(Emphasis added.)

Despite the City's knowledge regarding its incorrect calculation of the inspection fees collected from the plaintiffs, the City communicated by written notice to the taxpayers its decision *not* to refund the overpayment. In doing so, the City effectively released its right to hear and assess each taxpayer's potential claim for a refund. "[W]aiver is a voluntary relinquishment by a party of a known right." **BMG Music v. Chumley**, No. M2007-01075-COA-R9-CV, 2008 WL 2165985, at *5 (Tenn. Ct. App., filed May 16, 2008) (quoting **Reed v. Washington Cnty. Bd. of Educ.**, 756 S.W.2d 250, 255 (Tenn. 1988)) (internal quotation marks omitted). "Oral or written statements relinquishing known rights or privileges constitute an express waiver." **BMG Music**, 2008 WL 2165985, at *5 (citing **Grimsley v. Kittrell**, No. M2005-02452-COA-R3-CV, 2006 WL 2846298, at *3 (Tenn. Ct. App., filed Sept. 29, 2006) (*no perm. app. filed*)). Pursuant to Tenn. Code Ann. § 67-1-1802(c)(3), the City's July 23, 2014 correspondence to the plaintiffs waived the requirement for the plaintiffs, as the taxpayers, to file a claim for a refund before filing suit. The same subsection of the statute then permits the taxpayers to file suit in chancery court, which the plaintiffs timely did in this case. For the above reasons, we hold that the plaintiffs complied with the statute's pre-suit requirements under Tenn. Code Ann. § 67-1-1802(a)(2), (c)(3).

## VIII.

The trial court ordered the City to refund the improperly collected taxes for the period January 1, 2011 until June 30, 2014, as well as interest incurred since September 6, 2014, forty-five days after the City sent the July 23, 2014 letter informing the taxpayers that they would not refund the overpayment. The City maintains that the plaintiffs are only entitled to recover six months of overpaid inspection fees. The City again argues that "the appropriate remedial scheme that the Trial Court should have applied is Tenn. Code Ann. § 67-1-901, *et seq.*" and states that the plaintiffs' recovery is limited by Tenn. Code Ann. § 67-1-903 to "any overpaid taxes for the six months preceding the date they filed their lawsuit." As discussed in detail in section IV of this opinion, we have determined that Tenn. Code Ann. § 67-1-1807 applies in this case. Having found that Tenn. Code Ann. § 67-1-1807 applies, then Tenn. Code Ann. § 67-1-1801, *et seq.*, governs the present action: "[a]ll taxes paid on or after January 1, 1986 shall be governed by the laws regarding refunds and suits for the recovery of taxes *as set out in this part*." Tenn. Code Ann. § 67-1-1807(a) (emphasis added). Therefore, the plaintiffs' recovery is not limited by Tenn. Code Ann. § 67-1-903.

## IX.

Through an order entered in July 2015, the trial court awarded a total of $73,620.87 in attorney's fees to the plaintiffs' counsel as the prevailing party, pursuant to Tenn. Code Ann. § 67-1-1803(d). This statute states, in part, that "[t]he court shall award to the prevailing party reasonable attorneys' fees and expenses of litigation up to twenty percent (20%) of the amount finally assessed or denied, including interest after payment."

On appeal, the City does not contest the reasonableness of the rate charged by plaintiffs' counsel or the amount of the fee. Instead, the City maintains that Tenn. Code Ann. § 67-1-1803 "does not apply to suits contesting a municipal tax." As discussed in detail earlier in this opinion and in this section, we disagree with the City on this point. Again, we have found that Tenn. Code Ann. § 67-1-1807 applies to this case and that Tenn. Code Ann. § 67-1-1801, *et seq.*, therefore governs. Tenn. Code Ann. § 67-1-1807(a). As a result, we decline to find the trial court erred in granting the attorney fee award, which is permitted by Tenn. Code Ann. § 67-1-1803(d).

## X.

Prior to the April 30, 2015 trial, the City submitted an answer that listed several defenses, including:

> 32. The Defendant pleads and relies upon all immunities, protections and procedures provided by the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §29-20-101 et seq.
>
> 33. Plaintiffs' Complaint is barred by the applicable statute of limitations.
>
> \*       \*       \*
>
> 35. Plaintiffs' claims are barred by the doctrines of laches, waiver and equitable estoppel.
>
> 36. Plaintiffs' have failed to mitigate any alleged damages.
>
> 37. Plaintiffs' Complaint fails to state a claim upon which relief can be granted.
>
> 38. Plaintiffs' claims are barred by the doctrine of comparative fault.

19

39. Plaintiffs have failed to exhaust administrative remedies.

40. This Court lacks subject matter jurisdiction.

41. Plaintiffs' claims are barred for failure to comply with the following statutes: Tenn. Code Ann. § 67-1-707, Tenn. Code Ann. § 67-1-901, Tenn. Code Ann. § 67-1-903, Tenn. Code Ann. § 67-1-908, Tenn. Code Ann. § 67-1-911, Tenn. Code Ann. § 67-1-1801, Tenn. Code Ann. § 67-1-1802, Tenn. Code Ann. § 67-1-1803, Tenn. Code Ann. § 67-1-1804, Tenn. Code Ann. § 67-1-1807 and Tenn. Code Ann. § 67-1-1808.

42. Plaintiffs have failed to join as indispensable party the wholesalers or distributors who collected the tax at issue.

43. Plaintiffs' claims are barred because the tax at issue was not paid under protest.

(Numbering in original.)

The plaintiffs filed a motion seeking an order that the City's defenses were waived or, in the alternative, to strike defenses. The plaintiffs argued in their motion that "[o]nly one of the affirmative defenses raised by Defendant contains any factual statements at all . . . . The remaining defenses are bare assertions of legal principles and they do not comply in any way, shape, or form . . . with Tenn. R. Civ. P. 8.03." Tenn. R. Civ. P. 8.03 provides:

> [i]n pleading to a preceding pleading, a party shall set forth affirmatively facts in short and plain terms relied upon to constitute . . . comparative fault . . . estoppel . . . statute of limitations . . . waiver . . . and any other matter constituting an affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.

The City did not file a response to the plaintiffs' motion. The trial court granted the plaintiffs' motion – deeming the above defenses to be "waived or . . . stricken from the answer of the Defendant" – but, significantly, "reserve[d] the right to consider the effect of any statutory requirements and to give effect to those statutory requirements as part of this trial of this matter." In doing so, the trial court preserved for trial all defenses regarding statutory requirements or the effect of statutory requirements.

20

On appeal, the City asks us to find that the trial court erred by granting the plaintiffs' motion to strike. We decline to do so. The City avers that "[t]hough the Motion to Strike is not dispositive of any issue on appeal, the Trial Court nonetheless committed reversible error in granting it." The City states that "not all of the . . . paragraphs were affirmative defenses," specifically identifying paragraphs numbered 40, 41, and 43, listed above.

We note that "affirmative defenses must be pled with specificity." **ACG, Inc. v. Se. Elevator, Inc.**, 912 S.W.2d 163, 170 (Tenn. Ct. App. 1995). For instance, "[a] generic invocation of the words 'failure to state a claim' cannot be used as a vehicle to assert an affirmative defense." **Pratcher v. Methodist Healthcare Memphis Hosps.**, 407 S.W.3d 727, 736 (Tenn. 2013). Here, the City provided only conclusory statements, failing to provide supporting allegations of facts in short and plain terms in its answer. The City argues that "the same liberal pleading standards applied to complaints are also applied to answers." But conclusory allegations are insufficient to meet the requirements of Tenn. R. Civ. P. 8.03, which rule addresses what is required of affirmative defenses. **ACG, Inc.**, 912 S.W.2d at 170.

Further, the paragraphs that the City identifies as not including affirmative defenses – 40, 41, and 43 – effectively were not waived or stricken by the trial court. In its order waiving or striking certain defenses, the trial court "reserve[ed] the right to consider the effect of any statutory requirements and to give effect to those statutory requirements" in this matter. As a result, the City was not barred from asserting the defenses raised in paragraphs numbered 33, 41, and 43, regarding statute of limitations, the plaintiffs' alleged failure to comply with certain statutes, and the plaintiffs' failure to pay the excess inspection fees under protest.

Finally, the City points out that that a defense of subject matter jurisdiction cannot be waived. We agree. *See* **Estate of Brown**, 402 S.W.3d 193, 199 (Tenn. 2013). As this court has previously stated,

> [t]he concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy. A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Constitution of Tennessee or from legislative acts.
>
> \*   \*   \*
>
> The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. Thus, when a court's subject matter jurisdiction is questioned, it

21

> must first ascertain the nature or gravamen of the case. The court must then determine whether the Constitution of Tennessee, the General Assembly, or the common law have conferred on it the power to adjudicate cases of that sort.

***Midwestern Gas Transmission Co. v. Reese***, No. M2005-00805-COA-R3-CV, 2006 WL 468688, at *11 (Tenn. Ct. App., filed Feb. 24, 2006) (internal citations omitted).

The trial court did not bar the City from asserting a subject matter jurisdiction defense. Because the trial court reserved the right to consider statutes and their effect, the City was permitted to argue the court lacked jurisdiction. In fact, the City did assert such a defense at trial and on appeal. For example, the City argued at trial that even if Tenn. Code Ann. § 67-1-1801, *et seq.*, does apply, the plaintiffs failed to meet that statute's pre-suit notice requirements "and if those are not complied with, then this Court doesn't have subject matter jurisdiction to even adjudicate the case." The City maintained the same on appeal. There is no reversible error here.

## XI.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, the City of Morristown. This case is remanded for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

22