ALUMINUM COMPANY OF AMERICA,
Plaintiff–Appellant,

v.

Kathryn B. CELAURO, Commissioner
of Revenue of the State of
Tennessee, Defendant–Appellee.

NORTH AMERICAN ROYALTIES,
Plaintiff–Appellant,

v.

Kathryn B. CELAURO, Commissioner
of Revenue, State of Tennessee,
Defendant–Appellee.

Supreme Court of Tennessee,
at Knoxville.

Oct. 31, 1988.

Rehearing Denied Dec. 5, 1988.

Jackson C. Kramer, Wayne R. Kramer, Knoxville, for plaintiff-appellant Aluminum Co. of America (Kramer, Rayson, McVeigh, Leake & Rodgers, Knoxville, of counsel).

John P. Gaither, S. Gale Graham, Mark P. Kelly and Douglas E. Peck, Chattanooga, for plaintiff-appellant North American Royalties.

Daryl J. Brand, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen. and Reporter, Nashville, for defendant-appellee.

OPINION

HARBISON, Chief Justice.

These separate actions were filed by taxpayers in 1986 seeking refund of taxes paid during the years 1983 to 1985. None of the payments were made under protest. Both taxpayers contended that certain provisions of 1986 Tenn.Public Acts, chapter 749, authorized the institution of the actions without the requirement of payment under protest. Considering the cases independently, the Chancellor in each case held that the 1986 statute, generally dispensing with the requirement of payment under protest, did not apply to taxes paid prior to January 1, 1986. We affirm.

A. *The Aluminum Company of America Case*

This action was instituted on November 6, 1986, seeking recovery of local option sales taxes on industrial machinery paid in 1983 and 1984, without protest or without filing an administrative claim for refund until May 9, 1986, after the effective date of 1986 Tenn.Public Acts, chapter 749, section 6.

The predicate of the suit was the decision of this Court in *Bowater North America Corporation v. Jackson*, 685 S.W.2d 637 (Tenn.1985) released for publication by this

Court on February 19, 1985, nearly fifteen months before the taxpayer filed its claim for refund. The taxpayer was not a party to that action or to any other action involving the subject matter thereof until it filed its administrative claim in the present case.

Although the present case involves only local option sales taxes, no question has been made by the parties as to the propriety of its being appealed directly to this Court pursuant to the provisions of T.C.A. § 16–4–108. Apparently no such issue had been raised in the *Bowater* case, *supra*, which was decided by this Court on direct appeal from a trial court.

Ordinarily matters involving local revenue, rather than state revenue, are reviewed on direct appeal in the Tennessee Court of Appeals, rather than in this Court. The issues in the present case, however, are controlled by the issues in the *North American Royalties* case, *infra*, and for that reason the two cases will be considered together for purposes of appeal.

### B. *The North American Royalties Case*

Like the *Aluminum Company of America* case, *supra*, this action was brought under the provisions of the 1986 statute above referred to. Suit was filed on October 31, 1986, after an administrative claim for refund filed on June 30, 1986, had been denied by the Commissioner of Revenue. Involved in this case are Tennessee excise taxes paid without protest in January, 1984, and February, 1985.

### C. *Prior Taxpayer Remedies*

The parties agree that, insofar as these cases are concerned, prior to the enactment of the 1986 statute above referred to there was no statutory remedy available to a taxpayer to enforce a refund except that provided by T.C.A. §§ 67–1–901 *et seq.*— payment under protest and timely suit for refund thereafter. There is no claim that with respect to the types of taxes involved in these cases any special statutory remedy had been provided which could be enforced through the courts to afford relief to either of the taxpayers. *See Angel v. Jackson,* 724 S.W.2d 736 (Tenn.1987); *State v. De-*

*linquent Taxpayers,* 526 S.W.2d 453 (Tenn. 1975) and cases cited therein.

At least since the adoption of 1923 Tenn. Public Acts, chapter 66, however, and continuously thereafter, an administrative remedy was provided by statute under which a taxpayer could seek a refund from the Commissioner of Revenue of taxes erroneously or illegally collected. *See* Williams Tenn.Code Ann. § 270; T.C.A. §§ 67–2301 *et seq.* (1955 ed.). Until 1978 a taxpayer was allowed two years from the date of payment to seek a refund in this manner. By 1978 Tenn.Public Acts, chapter 646, the statutes were amended to allow

three (3) years from December 31 of the year in which the payment was made.

By 1983 Tenn.Public Acts, chapter 264, the Commissioner was further authorized to make refunds

without a claim being filed if he is in possession of proper proof and facts that a refund is due within the period of limitation described above.

These statutes, obviously, were in effect at the time the payments in the present cases were made, between 1983 and 1985, but apparently neither taxpayer sought relief thereunder. These statutes did not provide any form of judicial review or court-ordered refunds.

### D. *The 1986 and 1987 Statutes*

1986 Tenn.Public Acts, chapter 749, made sweeping changes in the law regarding taxpayer remedies, including the abolition of payment under protest as the exclusive method of seeking a refund through the courts. Most of its provisions clearly applied only to assessments made by the Commissioner after January 1, 1987. Obviously, those provisions are not involved in the present cases.

Section 6 of the statute, however, continued in force the administrative refund provisions previously referred to, permitting refund of taxes for which a claim had been filed within three years after December 31 of the year in which the payment was made. The 1986 provision added a requirement that the disputed amount of tax, pen-

alty and interest must be paid before any claim for refund can be filed, but it also continued in force the authority of the Commissioner to make refunds without a claim being filed upon proper proof that a refund was due within said three year period.

Added in Section 6(b) were provisions requiring the Commissioner to determine a refund claim within six months and authorizing the filing of suit for refund within six months after denial of the claim.

Section 12 of the 1986 statute provided that the requirements of T.C.A. § 67–1–901 of payment under protest would not apply after January 1, 1986, to any tax collected or administered by the Commissioner of Revenue. Notwithstanding any other provision of law, it is the intent of the General Assembly that it shall not be a condition precedent to any claim or suit for recovery of taxes collected or administered by the Commissioner of Revenue that the same was paid under protest, involuntarily, or under duress.

Section 22 of the 1986 legislation provided that the provisions of both Sections 6 and 12 "shall be retroactive to January 1, 1986...."

By 1987 Tenn.Public Acts, chapter 92, enacted by the General Assembly "to clarify" the provisions of the 1986 legislation, the General Assembly made it entirely clear that the 1986 legislation was intended by it to apply only to taxes paid on or after January 1, 1986. All taxes paid prior to January 1, 1986, were expressly stated to be governed by the laws regarding refunds and suits for recovery of taxes as those laws existed in 1985.[1] There is no dispute between the parties but that the statutes effective prior to the 1986 legislation in question here required payment under protest and suit within six months thereafter.

Each of the chancellors considering the 1986 statute in these separate cases concluded that it was the intent of the General Assembly to retain the provisions of prior law for taxes paid prior to January 1, 1986. While this intent was made very clear by

the 1987 remedial statute, all parties agree that if these taxpayers were given a vested right to proceed by the 1986 statute, the 1987 statute could not retroactively impair that right.

Both chancellors concluded, however, that the 1986 statute did not purport to expose to refund suits tax claims going back to January 1, 1983. The fiscal impact of such legislation could have been enormous, potentially unsettling state finances for fiscal years long closed. No fiscal note or other legislative history reflecting an intent to expose the state to such a major fiscal impact could be located by any of the parties in researching the legislative background of the 1986 statute.

■ As previously stated, both taxpayers had available to them for the tax years in question, under prior statutes, administrative remedies for refunds, but those statutes did not provide for refund suits in the event of denial by the Commissioner. Both taxpayers in the present case filed administrative claims which were timely under the prior statutes, but both sought to take advantage of the 1986 statute in attempting to maintain the present suits. Both chancellors held that the 1986 legislation was not intended to authorize such actions. In our opinion, those decisions were correct, considering the 1986 legislation wholly apart from the statute enacted the following year, which stated the legislative intent in express terms.

As previously stated, the 1986 statute made sweeping changes in prior law and significantly expanded remedies available to a taxpayer. In our opinion, however, the legislation was intended to apply only to taxes paid after January 1, 1986, and was not intended to reopen claims for taxes not paid under protest in earlier years. The requirement of payment under protest was effective until and was only made inapplicable after January 1, 1986, for taxes collected or administered by the Commissioner. The provisions of section 6(b), containing the new suit provisions, were retro-

---

1. The portions of the 1986 and 1987 legislation primarily involved in these cases are codified at T.C.A. §§ 67–1–901 through 909 and T.C.A. §§ 67–1–1801 through 1807 (1988 Supp.).

active only to January 1, 1986. The three-year period for filing administrative claims was not new but was primarily a continuation of a prior administrative remedy.

■ We find without merit the contention of the appellant, Aluminum Company of America, that the taxes in this case were illegally collected and that, therefore, payment under protest was not necessary. The taxpayer relies upon *Stroop v. Rutherford County,* 567 S.W.2d 753 (Tenn.1978). In that case the Court found that the complaint stated a cause of action and should not have been summarily dismissed without hearing on the merits because it contained allegations that the taxes had been involuntarily paid and the payments were made under such duress that formal protest was not necessary. That case was decided before the enactment of 1981 Tenn.Public Acts, chapter 274. Under that statute, county taxes, as well as municipal and state taxes, were required to be paid under protest before suit for refund could be maintained in the absence of some additional express statutory method of relief such as that discussed by the Court in *Goldsmith's Division v. City of Memphis,* 631 S.W.2d 396 (Tenn.1982).

The judgment of the chancellor in each of these cases is affirmed at the cost of the appellant. Each cause will be remanded to the trial court for collection of costs accrued there and for any further proceedings which may be necessary.

FONES, COOPER, DROWOTA and O'BRIEN, JJ., concur.