ILLINOIS CENTRAL GULF RAIL-
ROAD, Plaintiff/Appellant,

v.

STATE of Tennessee,
Defendant/Appellant.

Supreme Court of Tennessee,
at Nashville.

Feb. 25, 1991.

C. Thomas Cates, Jef Feibelman, Lisa A. Krupicka, Burch, Porter & Johnson, Memphis, William Boyd Hubbard, Littleton, Weed & Hubbard, Nashville, for plaintiff/appellant.

Charles W. Burson, Atty. Gen., and Reporter, Daryl J. Brand, Asst. Atty. Gen., Nashville, for defendant/appellant.

## OPINION

O'BRIEN, Justice.

This action was commenced by Illinois Central Gulf Railroad (Illinois Central) before the Tennessee Claims Commission against the State of Tennessee seeking a refund of sales tax on the purchase of diesel fuel which was paid under protest. The action was subsequently transferred to the Chancery Court for Davidson County, pursuant to T.C.A. § 67–1–1805. The case was tried on stipulated facts and exhibits.

As relevant to the issues before us, it appears from the stipulations, that Illinois Central, an interstate railroad corporation with railroad lines extending through portions of Tennessee, purchased substantial quantities of diesel fuel from Ergon, Inc., (Ergon), a Mississippi corporation. These purchases were governed by written agreements which extended from September 1974 through November 1982. The stipulations provided that the written agreements between Illinois Central and Ergon "exclusively govern and establish the legal rights and obligations between the parties. Purchase orders, invoices and confirmations formed the sales contract. The confirmation forms from Ergon for the purchase of the diesel fuel by Illinois Central contained a Passage of Title provision which was an express part of the agreement. It provided as follows:

Passage of Title: Title to product delivered into tankers, *barges* and trucks shall pass from Seller to Buyer when and as the product is transferred into such equipment. Title to product delivered into tank cars and pipelines shall pass from Seller to Buyer when carrier accepts custody of product for shipment. (Emphasis supplied.)

In addition to the purchase orders, invoices and confirmation there were two other agreements. The first, a 1974 Transportation Storage and Service Agreement, and subsequently a similar 1981 Storage and Service Agreement. In accordance with the 1974 agreement, the fuel was shipped from Ergon's facilities in Port Arthur, Texas to a storage tank at President's Island in Memphis, Tennessee. Illinois Central leased the tank from Ergon. All of the Ergon fuel shipped out from President's Island was placed into tank cars for transport to locations outside of the State of Tennessee for use by Illinois Central. The audit period involved for the assessed taxes was from 1 November 1980 through 31 July 1984. A total amount of $1,139,491.09 in tax and interest was assessed by the Tennessee Department of Revenue, with respect to Ergon transactions and paid under protest by plaintiff.[1]

During the same audit period plaintiff also purchased fuel from MAPCO, a Tennessee vendor. The MAPCO fuel was delivered from tanks in Tennessee via pipeline to an Illinois Central storage tank, also located in Memphis, Tennessee. This diesel fuel was used to power Illinois Central's locomotives in Tennessee or was placed into bulk tank cars for transportation to locations outside of the State. Tax was paid by plaintiff on the diesel fuel used for the locomotives. The Department of Revenue assessed Illinois Central $303,413.02 in tax and interest for transactions with MAPCO during the audit period. This amount was paid under protest.

In the two audits immediately preceding the one outlined above, plaintiff had not

been taxed on the activity for which they were subsequently assessed. The plaintiff was doing business in the same manner during the two previous audit periods as they were during the audit period in question.

The trial court considered the forms and agreements between Ergon and Illinois Central and relying on the Passage of Title provision contained in the confirmation forms he found that title as well as possession of the fuel passed to the plaintiff outside of the State of Tennessee. And under the stipulated facts that Illinois Central was entitled to a refund of the tax imposed. He entered judgment against the State in the amount of $1,139,491.09 for sales tax and interest wrongfully assessed by the State plus prejudgment interest in the amount of $338,397.16.

In reference to the MAPCO transactions he found that the tax assessment in question was made after an audit covering the period between 1 November 1980 and 31 July 1984. That plaintiff was relying on Chapter 552 of the Public Acts of 1986, subsequently codified as T.C.A. § 67–1–108, in its claim for a refund. He held that the Legislature did not intend for the act to be applied retroactively and it was the intent of the General Assembly to retain the provisions of prior laws for taxes paid prior to 6 March 1986, the effective date of the statute. He denied the plaintiff's claim for recovery and dismissed that part of the action with prejudice. The plaintiff has appealed the judgment of the trial court urging that the imposition of sales tax upon its transactions with Ergon and MAPCO involve the retroactive application of a change in the Revenue Department's policy, prohibited by T.C.A. § 67–1–108.

The State has appealed on the premise that the sales tax was properly imposed upon plaintiff for the purchases of fuel from Ergon because Illinois Central took title to and possession of the fuel in Tennessee.

---

1. During the audit period all of the fuel purchased by Illinois Central was subject for tax purposes to a resale certificate issued by the

Revenue Department. By accepting this "direct pay" arrangement plaintiff agreed to pay any applicable sales or use tax directly.

■ Insofar as the purchases of diesel fuel made by the plaintiff from Ergon are concerned, we are of the opinion that T.C.A. § 67–1–108 has no applicability. It is the insistence of the Department of Revenue that Illinois Central is subject to the sales tax because it took title to and possession of the fuel in Tennessee. The State, placing reliance on certain sections of the Uniform Commercial Code, argues that unless otherwise explicitly agreed, title passes to the Buyer at the time and place at which the Seller completes its performance with reference to the physical delivery of the goods and if the contract requires delivery at destination, title passes on tender there pursuant to T.C.A. § 47–2–401(2). T.C.A. § 47–2–319(1) is also cited for the assertion that when the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in T.C.A. § 47–2–503.

It is conceded the writings constituting the contracts for sale of fuel from Ergon to Illinois Central were plaintiff's purchase orders, Ergon's confirmations of the orders and Ergon's invoices. It is argued that the purchase orders provide that the fuel was to be shipped F.O.B. delivered to Ergon Tank, Memphis, Tennessee; F.O.B. Illinois Central's leased storage facility, Memphis, Tennessee, or some similar term. The State construed these terms in light of T.C.A. § 47–2–319(1)(b) to establish the intent that delivery of the fuel would occur at Memphis. We disagree with that construction. The State, in argument, overlooks the first line of each of the statutes in question. The first line of T.C.A. § 47–2–319(1) begins, "Unless otherwise agreed the term F.O.B. ...". The pertinent provision of T.C.A. § 47–2–401 begins, "Unless otherwise explicitly agreed title passes ...". Regardless of the F.O.B. terms in the various writings constituting

the contracts for sale, one of the express provisions of the Ergon confirmation form is the Passage of Title provision which specifically provides that title to the product delivered into tankers, barges and trucks shall pass from Seller to Buyer when and as the product is transferred into such equipment. There is no dispute that the diesel fuel was transported from Port Arthur, Texas to Memphis, Tennessee by *barge.* There is no merit to this issue and the judgment of the trial court in reference to the Ergon sales is affirmed.[2]

■ In his judgment applying to the purchase of diesel fuel from MAPCO by the plaintiff, the trial judge stated that T.C.A. § 67–1–108, enacted by the Legislature, effective 6 March 1986, did not apply in this case unless it was to be given retroactive effect. He held that nothing in the provisions of the Act indicated that the Legislature intended it to apply retroactively and it was the legislative intent to retain the provisions of prior laws for taxes paid before 6 March 1986. We agree with that conclusion.

It is not disputed that the sales from MAPCO to plaintiff occurred in Tennessee. It is not questioned that the MAPCO transactions would be subject to sales tax under the applicable tax statutes and case law, however, plaintiff argues earnestly that its transactions with MAPCO involve the retroactive application of a change in the Revenue Department's policy which is prohibited by T.C.A. § 67–1–108. The statute specifically provides:

"If the Commissioner should change the policy of the department as to the taxability of any privilege, such policy change shall be applied to the exercise of such privileges occurring after the date of such policy change only, unless otherwise provided by law."

In *Aluminum Company of America v. Celauro,* 762 S.W.2d 107, 109 (Tenn.1988) this Court held that the provisions of Chap-

---

**2.** "Whether these transactions are subject to a Tennessee use tax is not before us and it would be inappropriate to consider that issue. The Commissioner has at all stages of this case insisted that taxpayer's transactions were subject to the sales tax. There are substantial sub-is-

sues that would need to be addressed if the propriety of assessing a use tax was before us, none of which were litigated at any stage of this case." See *Volunteer Val–Pak v. Celauro,* 767 S.W.2d 635, 637 (Tenn.1989).

ter 749 of the Public Acts of 1986 were intended to apply only prospectively from a date established in the statute. We now apply that rule to T.C.A. § 67–1–108. The Act itself speaks with an expectation of futurity by the term, "if the commissioner *should change* the policy ..." It was obviously intended to apply to some future act and not to occurrences in the past. The audit period in question was for the years November 1980 through July 1984. The Act became effective 13 March 1986 and there is nothing in its terms to indicate that the Legislature intended it to apply retroactively. It is possible for officials charged with the interpretation and administration of revenue laws to change their interpretations and re-examine them, despite previous interpretation and construction extending over a period of many years. *Carr v. Chrysler Credit Corp.*, 541 S.W.2d 152, 155 (Tenn.1976). Illinois Central is liable for the taxes imposed in conjunction with their transactions with MAPCO.

The judgment of the trial court is affirmed. The case is remanded for any further proceedings required. Costs on this appeal are assessed equally between the parties.

DROWOTA, C.J., and COOPER and HARBISON, JJ., concur.

FONES not participating.