IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 9, 2017 Session

FILED
02/06/2018
Clerk of the
Appellate Courts

# CHUCK'S PACKAGE STORE ET AL. v. CITY OF MORRISTOWN

**Appeal by Permission from the Court of Appeals
Chancery Court for Hamblen County
No. 2014-CV-458    Thomas J. Wright, Judge**

_____

**No. E2015-01524-SC-R11-CV**

_____

From 2011–2014, a municipality charged alcoholic beverage retailers higher inspection fees than was authorized by the municipality's ordinance. A group of alcoholic beverage retailers paid the excess fees, but not under protest. After the municipality denied the retailers' requests for refunds, they sued the municipality for recovery of the excess collections and other damages. The municipality moved to dismiss, arguing that Tennessee Code Annotated sections 67-1-901, *et seq.*, required the retailers to have paid under protest any disputed taxes before filing suit to recover the overpayments. The trial court disagreed and awarded the retailers a judgment for the overpayments, ruling that Tennessee Code Annotated sections 67-1-1801, *et seq.*, applied and payment under protest was not required. The Court of Appeals affirmed. We hold that Tennessee Code Annotated sections 67-1-901, *et seq.*, rather than sections 67-1-1801, *et seq.*, apply to a suit to recover municipal taxes. Under section 67-1-901(a), the retailers were required to have paid under protest the disputed taxes before filing suit. Because the retailers did not pay the taxes under protest, they are not entitled to refunds.

**Tenn. R. App. P. 11 Appeal by Permission; Judgments of the
Trial Court and the Court of Appeals Reversed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Daniel R. Pilkington and Brian R. Bibb, Knoxville, Tennessee, for the appellant, City of Morristown.

F. Braxton Terry, Morristown, Tennessee, and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellees, Chuck's Package Store; The Cellar, Inc.; T & T Package

Store, LLC; Morristown Beverage Associates, Inc., d/b/a Cork & Keg Package Store; The Package Store; and C & C Package, Inc.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Charles L. Lewis, Deputy Attorney General; and Mary Ellen Knack, Senior Counsel, for the Amicus Curiae, State of Tennessee.

Douglas Gordon, Knoxville, Tennessee, for the Amicus Curiae, Tennessee Municipal Attorneys Association.

**OPINION**

**I.**

A municipality may impose by ordinance an inspection fee on licensed alcoholic beverage retailers located within the municipality. Tenn. Code Ann. § 57-3-501(a)(1) (Supp. 2017). The maximum amount of the fee is determined by the population of the county, according to the latest federal census, where the municipality is located. Counties with a population under 60,000 may not charge over eight percent of the wholesale price of the alcoholic beverages supplied by a wholesaler in the municipality. *Id.* § 57-3-501(b). Counties with a population over 60,000 may not charge more than five percent of the wholesale price. *Id.* § 57-3-501(c). Alcoholic beverage wholesalers are required to collect the fees from retailers and pay the fees each month to the municipality. *Id.* §§ 57-3-502, -503(a) (2013).

The city of Morristown in Hamblen County adopted an ordinance, under the authority of Tennessee Code Annotated section 57-3-501(a)(1), imposing an inspection fee on licensed alcoholic beverage retailers within its municipal boundaries. The city set the fee at eight percent of the wholesale price based on the county's population of less than 60,000. By January 2011, the county's population, according to the 2010 federal census, increased to over 60,000. Under the city's ordinance, the inspection fee should have decreased to a maximum fee of five percent of the wholesale price. However, from 2011–2014, the city of Morristown charged the retailers an eight percent inspection fee, which the wholesalers collected and remitted to the city.

In June 2014, one of the alcoholic beverage retailers, Chuck's Package Store, forwarded to the city a law firm advertisement letter advising that the city was overcharging inspection fees based on the population increase. The city's administrative services director acknowledged the error and pledged to refund the overpayments. However, in July 2014, after a meeting with other city officials, the administrative services director notified Chuck's Package Store that the city would not issue a refund.

2

On October 14, 2014, a group of alcoholic beverage retailers, Chuck's Package Store; The Cellar, Inc.; T & T Package Store, LLC; Morristown Beverage Associates, Inc., d/b/a Cork & Keg Package Store; The Package Store; and C & C Package, Inc., sued the city of Morristown in the Hamblen County Chancery Court to recover the overpaid taxes, damages, and other relief.

The city moved to dismiss, arguing in part that the retailers were not entitled to relief because they had failed to pay the disputed taxes under protest as required by Tennessee Code Annotated sections 67-1-901(a) and -911 (2013). The trial court denied the city's motion to dismiss, holding that Tennessee Code Annotated sections 67-1-1801, *et seq.* (2013 & 2017 Supp.), applied and the retailers were not required to have paid under protest the municipal taxes before seeking refunds. Following a bench trial in April 2015, the trial court awarded the retailers a judgment for the excess taxes paid from January 1, 2011, to June 30, 2014, in the amount of $452,120.51, prejudgment interest, and attorney's fees.

The Court of Appeals affirmed, holding that Tennessee Code Annotated sections 67-1-1807, *et seq.*, applied to relieve the taxpayers from the requirement of paying under protest disputed taxes before filing suit. *See Chuck's Package Store v. City of Morristown*, No. E2015-01524-COA-R3-CV, 2016 WL 3640063, at *7, *9 (Tenn. Ct. App. June 30, 2016). The Court of Appeals construed section 67-1-1807 to remove the requirement for payment under protest for *all taxes* paid after January 1, 1986, with that statute controlling and superseding all conflicting laws. *See id.* at *7 (quoting Tennessee Code Annotated section 67-1-1807(b)(1), (c)). The Court of Appeals relied on its previous decisions in *Admiralty Suites & Inns v. Shelby County*, 138 S.W.3d 233 (Tenn. Ct. App. 2003), and *Decatur County v. Vulcan Materials Co.*, No. 2001-00858-COA-R3-CV, 2002 WL 31786985 (Tenn. Ct. App. Dec. 12, 2002), holding that payment under protest was not required. *See id.* at *6–7.

## II.

We granted the city of Morristown's application for permission to appeal to determine whether taxpayers must pay under protest disputed municipal taxes before seeking refunds.[1] This issue requires us to decide whether Tennessee Code Annotated

---

[1] On appeal to this Court, the city of Morristown argued for the first time that Tennessee Code Annotated sections 67-1-1801, *et seq.*, were inapplicable because the overpayments at issue were fees rather than taxes, citing *Memphis Retail Liquor Dealers' Association, Inc. v. City of Memphis*, 547 S.W.2d 244, 246 (Tenn. 1977). The city did not raise this issue in its Tennessee Rule of Appellate Procedure 11 application for permission to appeal. "Appellate review is generally limited to issues that have been properly preserved and presented for review." *State v. Bishop*, 431 S.W.3d 22, 43 (Tenn. 2014)

sections 67-1-901, *et seq.*, or Tennessee Code Annotated sections 67-1-1801, *et seq.*, apply to a suit seeking a refund of municipal taxes. Based on the conflicting decisions from the Court of Appeals, there is a need for uniformity in this area of the law.

We review issues of statutory interpretation de novo and afford no presumption of correctness to the trial court's conclusions of law. *State v. Burgins*, 464 S.W.3d 298, 305 (Tenn. 2015) (citing *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015)); *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532–33 (Tenn. 2013)). Our role is to "assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute." *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016); *State v. Davis*, 484 S.W.3d 138, 144 (Tenn. 2016). To determine legislative intent, we first look to the plain language of the statute, giving the statute's words their natural and ordinary meaning. *Smith*, 484 S.W.3d at 403 (citing *State v. Jennings*, 130 S.W.3d 43, 46 (Tenn. 2004)); *Davis*, 484 S.W.3d at 145 (citing *Jennings*, 130 S.W.3d at 46). If the statutory language is clear and unambiguous, we will apply the plain meaning of its words in normal and accepted usage without a forced interpretation. *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015) (citing *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013)). We enforce the statute as written and need not consider other sources of information. *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016) (citing *Shelby Cnty. Health Care Corp. v. Nationwide Mut. Ins. Co.*, 325 S.W.3d 88, 92 (Tenn. 2010); *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009); *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 803 (Tenn. 2000)). We presume that "every word in the statute has meaning and purpose and should be given full effect" unless it violates the obvious intent of the General Assembly. *Dycus*, 456 S.W.3d at 924; *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010). We do not substitute our policy judgment for that of the Legislature. *Frazier*, 495 S.W.3d at 249 (citing *Gleaves*, 15 S.W.3d at 803).

We begin with a review of the statutes at issue. Tennessee Code Annotated section 67-1-901 requires a taxpayer, before seeking a refund, to pay under protest any disputed state taxes:

> (a) In all cases . . . in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due . . . the person against whom the proceeding or step is taken shall, if that person conceives the

(citing *Hodge v. Craig*, 382 S.W.3d 325, 334–35 (Tenn. 2012)). Therefore, we decline to address this contention and assume, without deciding, that the overpayments at issue are taxes.

4

same to be unjust or illegal, or against any statute or clause of the constitution of the state, *pay the revenue under protest*.

Tenn. Code Ann. § 67-1-901(a) (emphasis added).[2]

In 1959, the General Assembly made the provisions of Tennessee Code Annotated section 67-1-901(a) and other statutes (sections 67-1-902 to 67-1-905 and 67-1-908 to 67-1-910) applicable to proceedings for refunds of disputed taxes collected by municipalities. *Id.* § 67-1-911 (1959 Tenn. Pub. Acts 1000–01). The stated purpose of section 67-1-911 was "to carry out the legislative intent that all of such sections, which now apply to the recovery of state taxes erroneously paid, be conformed to apply also to the recovery of taxes erroneously paid to municipalities." *Id.* § 67-1-911(b). Section 67-1-911(b)(1) requires a municipal officer who collects taxes paid under protest to pay the taxes into the municipal treasury and notify municipal officials of the payment. A taxpayer who pays disputed taxes under protest and is successful in court is entitled to recover from the municipality a refund of the taxes, interest, and court costs. *Id.* § 67-1-911(b)(2).

In 1986, the General Assembly amended Tennessee Code Annotated section 67-1-901 to add subsection (b), which eliminated the requirement of payment under protest for taxes collected by the commissioner of revenue on or after January 1, 1986:

> (b) This section shall not apply to any tax collected or administered by the commissioner of revenue when such tax is paid on or after January 1, 1986. Notwithstanding any other law to the contrary, it is the intent of the general assembly that it shall not be a condition precedent to any claim or suit for recovery of any taxes collected or administered by the commissioner when such taxes were paid on or after January 1, 1986, that the taxes were paid under protest, involuntarily, or under duress.

*See id.* § 67-1-901(b) (1986 Tenn. Pub. Acts 644).

At the same time in 1986, the General Assembly amended Tennessee Code Annotated title 67, chapter 1, to add part 18. *See id.* §§ 67-1-1801, *et seq.* (1986 Tenn. Pub. Acts 635–44). This part sets forth a taxpayer's remedies when the tax assessment by the commissioner of revenue is "unjust, illegal, or incorrect." *Id.* § 67-1-1801(a)(1) (2013

---

[2] This statutory provision was enacted in 1873 and underwent minor amendments until subsection (b) was added in 1986. *See* 1873 Tenn. Acts 71–73; Shannon's Code, § 1059 (1918); 1932 Tenn. Code § 1790; Tenn. Code Ann. § 67-2303 (1976); 1986 Tenn. Pub. Acts 644.

& 2017 Supp.). Under Tennessee Code Annotated section 67-1-1801(a)(1)(A)–(B), the taxpayer can "pay the tax and file a claim for refund of the tax and proceed as provided in this part" or "file suit against the commissioner in chancery court in the appropriate county in this state, challenging all or any portion of the final assessment of such tax." *Id.*

Tennessee Code Annotated section 67-1-1807 (2013 & 2017 Supp.) removed the requirement of payment under protest:

> (a) *All taxes paid on or after January 1, 1986, shall be governed by the laws regarding refunds and suits for the recovery of taxes as set out in this part.*
>
> (b)(1) *It shall not be a condition precedent for suit for recovery of taxes paid on or after January 1, 1986, that the taxes be paid under protest, involuntarily, or under duress.*
>
> (2) No suit for the recovery of any tax paid prior to January 1, 1986, shall be allowed unless such tax was paid under protest.
>
> (c) *To the extent that this section conflicts with any other law, this section shall control and supersede all such laws.*

*Id.* § 67-1-1807 (emphases added) (1987 Tenn. Pub. Acts 122–23; 1986 Tenn. Pub. Acts 634–47). Therefore, before January 1, 1986, under Tennessee Code Annotated section 67-1-901(a), a taxpayer was required to pay both state and municipal taxes under protest before filing suit for a refund. *See* Tenn. Code Ann. § 67-1-1807(b)(2); *Aluminum Co. of Am. v. Celauro*, 762 S.W.2d 107, 108–09 (Tenn. 1988) (citing Tenn. Code Ann. § 67-1-901). On or after January 1, 1986, under Tennessee Code Annotated sections 67-1-901(b) and 67-1-1807(b)(1), a taxpayer was not required to pay under protest disputed state taxes collected or administered by the commissioner of revenue before seeking a refund. *See Gen. Motors Corp. v. Taylor*, 811 S.W.2d 897, 899 (Tenn. 1991) (construing together Tennessee Code Annotated sections 67-1-1807(b) and 67-1-901(b)).

Here, the city of Morristown and the retailers disagree on whether taxpayers are required to pay under protest disputed municipal taxes before filing suit for refunds. The city argues that Tennessee Code Annotated sections 67-1-901, *et seq.*, govern suits seeking refunds of municipal taxes; section 67-1-901(a) requires payment under protest; and sections 67-1-901(b) and 67-1-1807, which eliminated the requirement of payment under protest, apply only to proceedings for recovery of state taxes. Relying in part on *Lebanon Liquors, Inc. v. City of Lebanon*, 885 S.W.2d 63 (Tenn. Ct. App. 1994), the city

6

contends that because the retailers did not pay the disputed taxes under protest as required under sections 67-1-901, *et seq.*, the retailers are not entitled to refunds.

In *Lebanon Liquors*, a group of liquor retailers sued the city of Lebanon to recover excess inspection fees paid on the wholesale purchase of liquor due to a change in county population. 885 S.W.2d at 64–65. The trial court awarded the retailers the overpayments, although the retailers had not paid the amounts under protest before filing suit. The Court of Appeals reversed, holding that, under Tennessee Code Annotated sections 67-1-901 and 67-1-911, payment under protest is a condition precedent to the recovery of erroneously collected municipal taxes. *Id.* at 65–66. The Court of Appeals noted that in 1986, the Legislature added section 67-1-901(b) to relieve the payment-under-protest requirement for taxes due or collected by the commissioner of revenue, but it did not amend section 67-1-911(b), which explicitly requires payment under protest to a municipality. *See id.* at 66. The Court of Appeals construed section 67-1-901(b) as removing the payment-under-protest requirement for taxes due the state after January 1, 1986, but not for taxes due municipalities. The Court of Appeals held that unless the taxpayer paid the taxes under protest, the taxes were not recoverable. *See id.*

The Court of Appeals reached the same result in other cases. In *Nashville Metro Government v. New Orleans Manor, Inc.*, No. M2013-00706-COA-R3-CV, 2014 WL 3540765, at *1 (Tenn. Ct. App. July 16, 2014), Nashville Metro Government sued taxpayers for delinquent taxes on real property leased from the local airport authority. The taxpayers defended the suit, arguing that the taxes were not owed based on a release executed by the airport authority in a separate suit. The trial court ruled for Nashville Metro Government, and the Court of Appeals affirmed. *Id.* at *2, *4. The Court of Appeals held that to invoke the court's subject matter jurisdiction regarding the collection of taxes alleged to be unjust or illegal, taxpayers must first pay the taxes as required by Tennessee Code Annotated section 67-1-901, which provides "a full, complete, orderly, and exclusive remedy." *Id.* at *2 (citing *Am. Can Co. v. McCanless*, 193 S.W.2d 86, 90 (Tenn. 1946); *State ex rel. Davis v. ABC Brentwood Locksmith Serv.*, No. M2004-00638-COA-R3-CV, 2005 WL 2667042, at *2 (Tenn. Ct. App. Oct. 20, 2005)). Accordingly, the taxpayers, having failed to pay the taxes under protest, could not challenge the tax. *Id.* at *4.

Similarly, the Court of Appeals has applied the requirement of payment under protest in cases involving disputed county taxes. Under Tennessee Code Annotated section 67-1-912(a), county taxes are subject to the provisions of Tennessee Code Annotated sections 67-1-901 to 67-1-905 and 67-1-908 to 67-1-910. Tenn. Code Ann. § 67-1-912(a) (2013). In *Hoover, Inc. v. Rutherford County*, 885 S.W.2d 67, 68 (Tenn. Ct. App. 1994), the plaintiff sought a refund of excess mineral severance taxes assessed by the county. The county and county clerk filed motions to dismiss, asserting that the

county taxes were not paid under protest as required by section 67-1-912. The trial court denied both motions. On interlocutory appeal, the Court of Appeals applied the reasoning in *Lebanon Liquors*, reversed the trial court, and dismissed the suit because the payments to the county were not made under protest as required by section 67-1-901(a). *Id.* at 70.

In another case concerning recovery of disputed county taxes, *Heath v. Creson*, 949 S.W.2d 690, 692 (Tenn. Ct. App. 1997), the Court of Appeals held that the exclusive remedy for a taxpayer challenging county taxes is to pay the taxes under protest and sue for a refund. In *Heath*, the taxpayer challenged the county's assessment of liability under the Business Tax Act, Tennessee Code Annotated sections 67-4-701, *et seq.*, by filing suit against county officials. *Id.* at 690–91. The Court of Appeals, holding that the taxes at issue were county taxes, ruled that Tennessee Code Annotated section 67-1-901 applied to county taxes under section 67-1-912 and payment under protest was required. *Id.* at 692 (citing *Am. Can Co.*, 193 S.W.2d at 90; *Hoover*, 885 S.W.2d 67).

The Court of Appeals has required payment under protest in challenges to other types of local taxes. *See, e.g., State ex rel. Williamson Cnty. v. Jesus Christ's Church at Liberty Church Rd.*, No. M2009-02439-COA-R3-CV, 2011 WL 251212, at *2 (Tenn. Ct. App. Jan. 13, 2011) (finding that, to the extent the taxpayer contended *ad valorem* property taxes violated state law, payment under protest of the taxes was a prerequisite to filing suit, citing Tennessee Code Annotated section 67-1-901); *Moscheo v. Polk Cnty.*, No. E2008-01969-COA-R3-CV, 2009 WL 2868754, at *6 (Tenn. Ct. App. Sept. 2, 2009) (holding that a taxpayer challenging a county privilege tax on whitewater rafting excursions must pay the tax under protest and file suit under section 67-1-903); *Davis*, 2005 WL 2667042, at *3; *State ex rel. Manville Bldg. Materials Corp. v. Foster*, No. CA 81, 1991 WL 34554, at *4 (Tenn. Ct. App. Mar. 18, 1991) (finding three ways for a taxpayer to recover county taxes: through the administrative process under section 67-1-707, payment under protest based on section 67-1-901, or a property tax assessment challenge in limited circumstances under section 67-5-509).

The retailers maintain that they were not required to pay under protest the disputed municipal taxes before filing suit because Tennessee Code Annotated sections 67-1-1801, *et seq.*, applied and removed the requirement of payment under protest for all taxes—state and municipal. The retailers point to the broad language of section 67-1-1807(a), which provides "[a]ll taxes paid on or after January 1, 1986 shall be governed by the laws regarding refunds and suits for the recovery of taxes"; section 67-1-1807(b)(1), which removed the requirement of payment under protest for recovery of taxes paid on or after January 1, 1986; and section 67-1-1807(c), which states that "[t]o the extent that this section conflicts with any other law, this section shall control and supersede all such laws." *See* Tenn. Code Ann. § 67-1-1807.

The retailers rely on decisions from the Court of Appeals in *Vulcan Materials*, 2002 WL 31786985, and *Admiralty Suites*, 138 S.W.3d 233. In *Vulcan Materials*, Decatur County sued Vulcan Materials to collect an increase in the county's mineral severance tax. 2002 WL 31786985, at *1–2. Vulcan Materials, joined by three other mineral companies subject to the tax, responded, in part, by challenging the constitutionality of the mineral severance tax. *Id.* at *2. The trial court ruled that the mineral companies owed the increased tax on minerals severed after May 1995 (rather than October 1994, when the tax went into effect); that the mineral companies were estopped from challenging the constitutionality of the tax due to the passage of time; and in the alternative, that Decatur County had a rational basis for the allocation of mineral tax revenues. All parties appealed. *Id.* at *3–4. Decatur County argued in part that the mineral companies were barred from challenging the legality of the tax because they failed to pay the tax under protest as required by sections 67-1-901(a) and 67-1-912, which makes section 67-1-901(a) applicable to the collection of taxes by a county. *Id.* at *4–5. The mineral companies responded that section 67-1-1807 did not require payment under protest. *Id.* at *5. The Court of Appeals, citing no case authority, ruled that the language of section 67-1-1807 was "quite broad" and encompassed claims regarding taxes paid to the county and the state. It concluded that section 67-1-1807 applied, and the taxpayer need not pay the tax under protest as a condition precedent to asserting a claim against the county challenging the legality of the tax. The intermediate appellate court acknowledged (in a footnote) its prior inconsistent rulings in *Lebanon Liquors* and *Hoover* but concluded that these previous cases were not applicable because the effect of section 67-1-1807 had not been raised in those cases. *Id.* at *5 n.4. More significantly, the Court of Appeals noted that section 67-1-1807 controls in the event of conflict of law, *see id.* at *5, but did not reference the limitations of section 67-1-1807; analyze the interplay between sections 67-1-901, *et seq.*, and 67-1-1801, *et seq.*; or address the applicability of section 67-1-912.

Following the reasoning of *Vulcan Materials*, the Court of Appeals held in *Admiralty Suites* that a group of hotels challenging the constitutionality of occupancy taxes levied by cities and counties did not have to first pay the taxes under protest. *Admiralty Suites*, 138 S.W.3d at 237–38. The municipal and county defendants argued that the trial court lacked subject matter jurisdiction to hear the claims because the hotels had not paid the disputed taxes under protest. *Id.* at 237. Citing *Vulcan Materials*, the Court of Appeals held that the language of section 67-1-1807 was sufficiently broad to include claims against municipal and county entities for recovery of taxes and that the taxpayers did not have to pay under protest the taxes before pursuing the claim. *See id.* at 238 (citing with approval *Vulcan Materials*, 2002 WL 31786985, at *5). The Court of Appeals in *Admiralty Suites* did not refer to *Lebanon Liquors*, *Hoover*, or other cases requiring payment under protest before filing suit. As in *Vulcan Materials*, the Court of Appeals in *Admiralty Suites* did not address the limitations of section 67-1-1807; the

9

interplay between sections 67-1-901, *et seq.*, and 67-1-1801, *et seq.*; or the applicability of section 67-1-911.

After reviewing Tennessee Code Annotated sections 67-1-901, *et seq.*, and Tennessee Code Annotated sections 67-1-1801, *et seq.*, we hold that on or after January 1, 1986, the process for taxpayer recovery of state taxes differs from the process for recovery of municipal taxes. Before January 1, 1986, under Tennessee Code Annotated section 67-1-901, a taxpayer was required to pay under protest both state and municipal taxes before filing suit for a refund. On or after January 1, 1986, under Tennessee Code Annotated sections 67-1-901(b) and 67-1-1807(b)(1), a taxpayer is not required to pay under protest disputed state taxes collected or administered by the commissioner of revenue before filing suit for a refund. The statutory changes in section 67-1-901(b) and section 67-1-1807(b) did not eliminate the requirement of payment under protest in section 67-1-901(a) for disputed municipal taxes.

We base our decision on the following considerations. First, the 1986 enactments of Tennessee Code Annotated section 67-1-901(b) and Tennessee Code Annotated sections 67-1-1801, *et seq.*, that removed the requirement of payment under protest reference only taxes collected by the commissioner of revenue; there is no mention of taxes collected by a municipality. We cannot add "municipal taxes" to these statutes to expand their scope.

Second, the provision in Tennessee Code Annotated section 67-1-1807(a) that removed the requirement of payment under protest for state taxes is self-limiting. It provides that "[a]ll taxes paid on or after January 1, 1986, shall be governed by the laws regarding refunds and suits for the recovery of taxes *as set out in this part*." Tenn. Code Ann. § 67-1-1807(a) (emphasis added). This italicized language, "as set out in this part," necessarily references a claim for refund under part 18 of Tennessee Code Annotated title 67, chapter 1—sections 67-1-1801 to 67-1-1808—not a claim for refund under part 9 of Tennessee Code Annotated title 67, chapter 1—sections 67-1-901 to 67-1-912. Because there is no conflict between section 67-1-1807 and sections 67-1-901, *et seq.*, section 67-1-1807 does not supersede the payment-under-protest requirement of section 67-1-901(a). *See id.* § 67-1-1807(c); *cf. Memphis Managed Care Corp. v. Tenn. Dep't of Commerce & Ins.*, No. M2007-02437-COA-R3-CV, 2009 WL 112573, at *4 (Tenn. Ct. App. Jan. 14, 2009) (holding that before a taxpayer could pursue a suit for refund in the Claims Commission, the taxpayer, under Tennessee Code Annotated section 67-1-901, had to have paid under protest penalty and interest due the Department of Commerce and Insurance because of late payment of insurance premium taxes).

Third, Tennessee Code Annotated section 67-1-911(b) provides that "[i]n order to carry out the legislative intent that all of [sections 67-1-901, *et seq.*], which now apply to

10

the recovery of state taxes erroneously paid, be conformed to apply also to the recovery of taxes erroneously paid to municipalities." Tenn. Code Ann. § 67-1-911(b). There is no corresponding provision in sections 67-1-1801, *et seq.*, making these sections applicable to municipal taxes. The Legislature, by enacting sections 67-1-1807 and 67-1-901(b), specifically removed the payment-under-protest requirement for disputed state taxes collected by the commissioner of revenue but did not eliminate this requirement for municipal taxes. *See id.* § 67-1-1807(a). The Legislature enacted these statutes together as part of the same statutory scheme. *See* 1987 Tenn. Pub. Acts 122–23; 1986 Tenn. Pub. Acts 634–47. Under the doctrine of *in pari materia*, we read these provisions together to give the intended effect to the entire statutory scheme. *See In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 560 (Tenn. 2013).

Finally, any construction of section 67-1-1807 that removes the payment-under-protest requirement for all taxes—including municipal taxes—would impliedly repeal the payment-under-protest requirement in sections 67-1-901(a) and 67-1-911 for municipal taxes. Implied repeals are disfavored. *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *McDaniel v. Physicians Mut. Ins. Co.*, 621 S.W.2d 391, 394 (Tenn. 1981)); *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 339 (Tenn. 2009) (quoting *State v. Safley*, 112 S.W.2d 831, 832 (Tenn. 1938)). We presume that the requirement of payment under protest in section 67-1-901(a), applicable to municipalities through section 67-1-911, has meaning and purpose and should be given full effect. *See Dycus*, 456 S.W.3d at 924; *Marshall*, 319 S.W.3d at 561. The General Assembly could have included language in section 67-1-901(b) removing the payment-under-protest requirement for taxes collected or administered by the commissioner of revenue *and* municipalities—but it did not. We are not free to add this language to expand the scope of sections 67-1-1801, *et seq.*; restrict the scope of sections 67-1-901, *et seq.*; or substitute our judgment for that of the Legislature. Therefore, we conclude that the General Assembly intended to maintain the payment-under-protest requirement for municipal taxes.[3] To the extent that *Admiralty Suites & Inns v. Shelby County* and *Decatur County v. Vulcan Materials Co.* are inconsistent with this conclusion, we

---

[3] The legislative history of Tennessee Code Annotated sections 67-1-1801, *et seq.*, supports this conclusion. The Wilder Bill, Tennessee Public Acts 1986, chapter 749, named after the bill's sponsor, Lieutenant Governor John Wilder, added sections 67-1-1801, *et seq.*, and section 67-1-901(b), among other statutory amendments. In the legislative debates, Senator Milton Hamilton asked Lt. Gov. Wilder whether the 1986 bill is intended to apply "to local government too or is it just about the state," to which Lt. Gov. Wilder responded, "Not yet, Senator Hamilton, it's just the state." *Wilder Bill: Hearing on S.B. 1437 Before the Senate Finance, Ways & Means Comm.*, 94th Gen. Assemb. (Tenn. 1986) (statements of Sen. Milton Hamilton, Member, S. Comm. of Fin., Ways & Means, and Lt. Gov. John S. Wilder, Speaker of the Senate and bill sponsor).

overrule these decisions. Based on our holding, all other issues raised in this appeal are pretermitted.

## III.

We hold that Tennessee Code Annotated sections 67-1-901, *et seq.*, govern actions to recover disputed municipal taxes. Under section 67-1-901(a), a taxpayer must pay under protest disputed municipal taxes before filing suit for a refund. Here, the retailers did not pay the municipal taxes under protest before filing suit; therefore, they are not entitled to recover the overpayments. We reverse the trial court and the Court of Appeals and remand this cause to the trial court for any further proceedings. Costs are taxed to Chuck's Package Store; The Cellar, Inc.; T & T Package Store, LLC; Morristown Beverage Associates, Inc., d/b/a Cork & Keg Package Store; The Package Store; and C & C Package, Inc., for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE